Edward JONES, Appellant,

v.

Ted BAILEY, Appellee.

No. 15011.

Court of Civil Appeals of Texas.

Dallas.

Nov. 18, 1955.

Rehearing Denied Dec. 16, 1955.

Earl R. Parker and Burt Barr, Dallas, for appellant.

Tom D. Matthews, Dallas, for appellee.

CRAMER, Justice.

This is an adoption proceeding. On January 11, 1955, Ted Bailey, appellee, filed his petition to adopt a child, eight years and nine months of age, the son of petitioner's wife by a former marriage. The petition was grounded on the allegation that the father of the boy had abandoned, deserted, and made no contribution to the support of the child for a period of more than two years from November 21, 1951, to date, and other material allegations to such adoption. The mother filed her consent, and the natural father filed an answer contesting the application.

The Chief Juvenile Officer's report of his investigation recommended that, if the judge found the child to be an adoptive subject, the applicant be granted leave to adopt the boy and change his name to. Bailey. The Juvenile Judge, after finding that the father had not substantially contributed to the support of the child since November 21, 1951, more than two years, held that the appellant had abandoned the child, and on such findings gave his written consent to the adoption.

After service of proper notice on the natural father, and after a hearing at which the natural father, the natural mother, and the adoptive father each testified, the trial court granted the prayer of the petitioner,

—the adoptive father. The natural father has perfected this appeal, briefing two points, in substance, error in (1) permitting appellee to adopt said child over appellant's protest; and (2) in permitting the adoption of said minor without appellant's written consent.

Appellee counters that the judgment should be affirmed because (1) the evidence from appellant, from appellee, and from the mother, shows that the child had been abandoned by the natural father for a period of more than three years; (2) the evidence and records of the Juvenile Court show that the natural father had not contributed to the support of the child for more than three years; and (3) the trial court correctly found the minor to be a proper subject for adoption and correctly granted the application.

All points are briefed together and will be so considered. The record reflects that at the time of the divorce the judgment provided for child support at $10 per week; that from the date of the judgment in June 1950 to November 1951, the natural father paid 62 Ten-Dollar payments; from November 1951 to January 1955, none of the 161 payments due were paid. From January 4, 1955, to February 7, 1955, appellant paid a total of $180 in money orders to the Juvenile Court of Dallas County.

The burden of appellant's contention is that he did not abandon the child as provided in section 6, Art. 46a, V.A.C.S.

■ The written consent of the living parent, the father, not having been obtained in this case, and the failure of the natural father to contribute substantially to the support of the child for a period of more than two years, commensurate with his financial ability, and his voluntary abandonment and desertion of the child for more than two years, under Art. 46a, § 6, supra, made it unnecessary, as a matter of law, for appellee to obtain the written consent of appellant, the natural father, under ordinary circumstances. However, here it is further undisputed that sometime after the two-year period depended upon to support the adoption, and before the petition for adoption was filed, the natural father resumed payments of child support.

The parties are correct in stating that the controlling question is one of law, to wit: Whether, after the statutory period of two years of non-support, a resumption of payment of child support, under all the circumstances surrounding the payment here, will bar the adoption of the child by the step-father without the natural father's written consent. In other words, does the resumption of child support payments void or wipe out the step-father's right to adopt the child without the natural father's consent in writing? There is also the question of whether the payments were made on the prior obligation, that is, the first accrued unpaid payments, or whether such payments were made on current amounts due at the time they were made.

The evidence, material here, is in substance: It was not disputed that the parties had separated, that the necessary venue facts existed, and that the divorce was granted July 7, 1950.

Jones, the natural father, material here, testified on examination as an adverse witness by Mrs. Bailey's attorney, that he was supporting another child by a former marriage; that he worked all during the year 1954, about five months during 1953, and about six months during 1952; that he was ill part of the time; was in the hospital four days in 1953; had paid about $620 on the child's support; that he had trouble seeing the child; he had bought the boy a bicycle for Christmas but his former wife would not let the child have it, and at her request he picked it up the day before he testified in this case. He did not know where the child was, during the period he failed to make payments; that he called the child's mother up once or twice a year at week-ends; his former wife told him she was not going to take the money and for him not to send it; she didn't need it. On cross-examination, that he had not been able to see the child except about five times and had had the child's mother cited for

contempt; the Judge about November 1951 made the mother let him have the child for two weeks. During the time he did not support the child, he did not know where the child was; further testified as to payments made to the District Clerk. On re-direct, testified that in November 1951 he was in arrears about $300 and agreed, in court, to pay $40 and keep up his child support; that he hasn't kept it up because he hasn't been able to work; he is now married and has a nineteen-months old child by his present wife and is providing for that family; his salary is now $300 per month; he made $275 per month since 1953. On re-cross: He opposed the adoption and sought to establish his right of visitation. If he establishes his right of visitation, he will pay $20 every two weeks; he is able to pay very little on back payments; his former wife was hateful about his visiting the child at Christmas; she didn't want him to send any more money for the child; that he wasn't going to see the child anymore and the child didn't need anything at all.

Eloise Bailey, mother of the child, testified in substance, material here, that she had not received the last moneys (ten Postal Money Orders) which were introduced in evidence. The money orders were payable to the minor, not to the mother. At the time she received five of the money orders, the adoption proceeding had been instituted; she was in the Juvenile Officer's office and heard a clerk say to another: "Do you have any idea where Eloise Bailey lives? We have been looking for her * * *"; that she spoke up, saying she was Eloise Bailey. It was later that she found other money orders in the Juvenile Officer's hands covering amounts totaling $180; also testified that she wants her two sons by Bailey and her son here involved to grow up together; her present husband shows no partiality between them. On cross-examination: That she and Jones separated about a year before the divorce was granted; that during the fall of 1950 she had no objection, so long as he supported Mike; he also had the boy with him in 1951, but in 1952 he did not ask for

him and did not have him. She hasn't heard from Jones since. She did not know he had been ill in 1952 or 1953; he had not, so far as she knows, made any effort to visit the child in the latter part of November 1954; in 1954 he did resume his child support payments to the Juvenile Court, but she did not know of it until in January. The adoption proceeding by her present husband was filed a week after Christmas. The record of the Juvenile Department shows the money was paid in January, but that the dates on the money orders in evidence were November and December of 1954 and January and February of 1955. Mrs. Bailey testified she first learned of same when she heard her name called in the Juvenile Department, at which time she was advised that they had some money orders for her. Also, that appellee Bailey's mother called her in October and talked to her and Mike. She and Bailey have been married four years and have two children; she would like for Bailey to adopt Mike, so he can be raised with her other children. Her present husband treats Mike as a son, shows no partiality.

Jones, on cross-examination, testified in substance that the child's mother had no objection to the boy visiting over the week-end with him, so long as he was supporting the child; that he came over twice, after she told the Judge in 1951 that he could see the boy, and on one time took him off in a truck.

She (the mother) has not heard from Jones since. He did not visit the child in 1952 or 1953 so far as she knows; nor in 1954; didn't even ask to see him Christmas. Although she did not know it at the time, Jones did send some $10 money orders to the Juvenile Department, beginning in November 1954; they were payable to her son, not to her. She did not file the adoption proceeding sooner, because she did not have the money—after household and other expenses, and a Mr. Matthews had told her she had to wait two years; and as follows:

"A. The money, I don't want that; I would rather have the adoption.

"Q. You don't want the money, you would rather have the adoption? A. Yes. * * *

"Q. Suppose the child is adopted by Mr. Bailey, Mr. Bailey would would assume all the responsibility for that child, you understand that? A. He has been doing it since we have been married anyway. * * *

"Q. (By Mr. Parker) Would you be willing for him to visit the child? A. No.

"Q. All right. The truth is that you haven't been willing for him to visit the child at any time since the entry of the divorce decree? A. That is not right.

"Q. Well, Judge Blankenship had to compel the only visitation the man had. A. That was because he was so far behind in payments.

"Q. He wasn't too far behind at that time, was he? A. Well, it was kind of hard for me, to begin with, to live with a child just on what I made. I was taking care of him with no money whatsoever for a year and a half.

"Q. During the year 1951 Mr. Jones made the child support payments fairly well, didn't he? A. Well, fairly well, yes, but ask him what he did that whole year that we were separated; not one penny."

The mother further testified that when her lawyer told her to let the father see the child, she complied. She has not since that time endeavored to collect the child support through court action, and if he pays child support he can visit the child.

Ted Bailey, petitioner for the adoption, testified in substance that he has been married to Mike's mother about four years. Mike has been in the home of his mother and step-father in Grand Prairie during that time,—since May or June 1951. He, Bailey, has been listed in the Phone Directory at that address for about two or three years; he and Jones have known each other since they were boys. Jones knows the members of his (Bailey's) family and has visited them, but has made no effort to come out to see his (Bailey's) home in Grand Prairie. Bailey also testified that he is fond of Mike, feels toward him as he does his own sons and treats him the same, and intends to raise Mike as one of his three boys. He would not now be willing to let Jones have the child for two or three days at the time, or visit him.

Adoption in Texas is solely a creature of our statute (unknown to the common law). Hickman v. Smith, Tex.Civ.App., 238 S.W.2d 838, error ref.; Reeves v. Ellis, Tex.Civ.App., 257 S.W.2d 876, n. r. e.

■ The evidence having raised fact issues on material questions, in our opinion the court's findings settled the fact questions against appellant. We are also of the opinion that to adopt the rule stated by appellant that his resumption of child support after a period of two years of nonsupport had passed, is not of itself sufficient, as a matter of law, to wipe out the accrued right of Bailey to adopt the child without the natural father's consent. If such were the rule, the delinquent father could at any time after the two years of nonsupport provided for in the statute, and before his child is adopted, avoid the adoption by a few current payments of child support, and thereby start a new two-year period of nonsupport under the statute. The circumstances here surrounding, the failure to pay, the periods of delinquency, etc., and the fact that only interested witnesses testified in this case (no disinterested witnesses on either side have testified), make questions of fact for the trier of the facts, and support the trial court's judgment.

Appellant's points are each overruled and the judgment of the trial court affirmed.

Affirmed.