James Oris CAWLEY, Petitioner,

v.

D. G. ALLUMS, Respondent.

No. B–4792.

Supreme Court of Texas.

Feb. 5, 1975.

Rehearing Denied March 5, 1975.

Smead, Roberts, Harbour, Smith, Harris & French, Earl Roberts, Jr., Longview, for petitioner.

Eldred Smith, Longview, for respondent.

POPE, Justice.

James Oris Cawley, the natural father of an eight-year-old child, complains of the

trial court's order of adoption because he did not give his written consent to the child's adoption and his consent was not excused by the provisions of section 6(a) of article 46a, Vernon's Tex.Rev.Civ.Stat. Ann.:

> Sec. 6. (a) Except as otherwise provided in this section, no adoption shall be permitted except with the written consent of the living parents of the child; provided, however, that if a living parent or parents shall voluntarily abandon and desert a child sought to be adopted, for a period of two (2) years, and shall have left such child to the care, custody, control and management of other persons, or if such parent or parents shall have not contributed substantially to the support of such child *during such period of two (2) years* commensurate with his financial ability, then, in either event, it shall not be necessary to obtain the written consent of the living parent or parents in such default, and in such cases adoption shall be permitted on the written consent of the Judge of the Juvenile Court of the county of such child's residence; or if there be no Juvenile Court, then on the written consent of the Judge of the County Court of the county of such child's residence. (Emphasis added.)

The court of civil appeals affirmed the adoption order. 511 S.W.2d 402. The case requires a construction of the words "during such period of two (2) years."

Cawley was the former husband of Mrs. D. G. Allums which marriage was dissolved on April 21, 1971. D. G. Allums, joined by his wife, the mother of the child, commenced these adoption proceedings on August 8, 1973, and then obtained the written consent to adopt from the Judge of the Juvenile Court of Gregg County. Cawley appeared and protested the adoption. The court granted the adoption, ruling that the father's consent was unnecessary because he had not contributed substantially to the support of his child "during such period of two (2) years commensurate with his financial ability." We reverse the decrees of the courts below.

The trial court found that the father earned a little more than $22,000 between the date of the divorce in May, 1971, and the date the adoption petition was filed in August, 1973. The court further found that the original divorce decree ordered the father to pay $200 each month, but on January 26, 1972, the court reduced the support payments to $135 monthly. According to the findings of the trial court, Cawley made support payments as indicated by the listing in the margin.[1] The court then concluded that Cawley failed to support his son for two years commensurate with his financial ability and that his consent to the adoption was not required. We shall examine the twenty-four-month period immediately before the adoption proceedings were commenced since the period from

---

1.

| 1971 | | 1972 | | 1973 | |
|---|---|---|---|---|---|
| April | none | Jan. | $200 | Jan. | none |
| May | none | Feb. | $150 | Feb. | $60 |
| June | none | | (reduced) | Mar. | $60 |
| July | $200 | March | none | April | none |
| Aug. | $200 | April | none | May | none |
| Sept. | $200 | May | none | June | none |
| Oct. | $200 | June | none | July | $80 |
| Nov. | $200 | July | none | Aug. | $135 |
| Dec. | none | Aug. | none | | |
| | | Sept. | none | | |
| | | Oct. | none | | |
| | | Nov. | none | | |
| | | Dec. | none | | |

September, 1971, to August, 1973, was the time during which Cawley made the least number of payments.

Cawley fully complied with the court's support orders during five of the first six months of that twenty-four-month period, but D. G. Allums says that the proper way to determine whether Cawley substantially contributed is to total the amount owing for the entire twenty-four months and to compare that with the amount Cawley actually paid. That is the construction given the statute by the courts below, and they have concluded that the amount contributed, $1,285, is not a substantial part of the total which Cawley owed for the whole period, which was $3,850.

Cawley, on the other hand, argues that he fully complied with the support orders during five of the first six months of the twenty-four-month period and that he made one other full payment in August, 1973, along with other lesser payments. He says that his record of non-support did not endure for the required twenty-four-month period by reason of his complete compliance with the support orders during one-fourth of that period.

■■■ This court has held that, while adoption statutes are generally construed liberally, the rule of strict construction applies in favor of a non-consenting parent to the adoption. Heard v. Bauman, 443 S. W.2d 715 (Tex.1969); Leithold v. Plass, 505 S.W.2d 376 (Tex.Civ.App.1974, writ ref'd n. r. e.). Independent of that rule, however, the meaning of section 6(a) in its application to a parent's failure to provide substantial support for the required period of time is clarified when we examine the entire section. Section 6(a) excuses a parent's written consent in two instances. The first basis is that of a parent who voluntarily abandons and deserts a child "for a period of two (2) years . . .." This means that the fact of abandonment or desertion must first exist and that it must then continue for the period of time required by the statute. This is not to hold that a temporary interruption may defeat the fact of abandonment, but the term does mean that the fact must endure for a period of two years after the fact occurs.

■■■ There is no contention that the father fell under this provision, but it has significance, time-wise, when we come to the second reason which excuses the parent's consent. The statute speaks of a failure to contribute substantially to the support of such child "during *such* period of two (2) years . . .." (Emphasis added.) The word "such" refers to the kind of time lapse required under the abandonment and desertion provision of the statute. It is "such" period, meaning that it is the same kind of and is like the time requirement applicable to abandonment. The failure to contribute substantially to the child's support did not commence in this case until March, 1972. Even if we commence with the support record in April, 1971, we would reach the same conclusion as to the commencement of the twenty-four-month period, since Cawley paid regularly from July, 1971, through February, 1972, except for one month. The relevant period of non-support thus commenced in March, 1972, and he made seven monthly payments out of eight prior to March. Until the fact of Cawley's non-support commensurate with his financial ability existed, the period of time did not commence to run. The period from the date of commencement of Cawley's defaults in his parental duty to the date the adoption petition was filed falls short of the required two years.

The judgments of the courts below are reversed and the order for adoption is dissolved.

Dissenting opinion by GREENHILL, C. J., and Dissenting opinion by SAM D. JOHNSON, J., in which STEAKLEY, J., joins.

GREENHILL, Chief Justice (dissenting).

The trial court fixed the amount James Cawley could and should pay per month

commensurate with his financial ability, and those amounts are not disputed. Whether, over a two year period, his payments were substantial is, in my opinion, an issue of fact. The trial court found that Cawley's payments over a two year period were not substantial, and I think that there is some evidence to support the finding. I would therefore affirm the judgments below.

SAM D. JOHNSON, Justice (dissenting).

This dissent is respectfully submitted.

The majority views this case as one requiring an interpretation of only the six words contained in Article 46a, Section 6(a), Texas Revised Civil Statutes Annotated, "during such period of two (2) years". The issue is not, however, to be resolved only by an interpretation of these words; the statute is not so limited. In the *complete* words of the statute the decisive issue is whether James Cawley failed to contribute "substantially to the support of such child during such period of two (2) years commensurate with his financial ability". This requires not only a determination of which two-year period is applicable, but also an examination of the support payments actually made by Cawley compared to both the payments he was ordered to make by the trial court and the amount he earned during the appropriate period.

It is well established that the two-year period to be examined by the court need

not be the two years immediately preceding the filing of the petition for adoption, but may be *any* two-year period. *E. g.,* Lout v. Whitehead, 415 S.W.2d 403 (Tex.1967); Jones v. Bailey, 284 S.W.2d 787 (Tex.Civ. App.—Dallas 1955, writ ref'd n. r. e.). The majority does not dispute this. The majority nevertheless selects the two years immediately preceding the adoption with the assertion that this is the period during which the total of the payments made by Cawley was less than any other two-year period.[1] It then states that Cawley's failure to support did not commence until March 1972 because he paid regularly from July 1971 through February 1972, except for one month. The majority would reach the same conclusion if the two-year period commenced in April 1971 since the block of payments made from July 1971 through February 1972 interrupted the running of the period of nonsupport. The effect of the majority's decision is to require that there be two complete and continuous years of *no* support before an adoption can be entered without the consent of the natural parent. This interpretation completely fails to give any emphasis to the word "substantially" and completely fails to give any emphasis to the phrase "commensurate with his financial ability" as these words appear in Article 46a. The majority has, in fact, rewritten Article 46a to eliminate the word "substantially" and the phrase "commensurate with his financial ability" from its operative language. This is directly contrary to the clear intent of the Legislature as expressed in that Article.[2]

---

1. The actual assertion of the majority is that "the period from September, 1971, to August, 1973, was the time during which Cawley made the least number of payments." This is clearly incorrect since in any continuous two-year period, whether immediately preceding the adoption or immediately following the divorce, the *number* of payments made by Cawley was the same. The total *amount* of those payments, however, differs depending on which two-year period is examined. Thus, we interpret the majority's statement to mean that the period immediately preceding the adoption was the period during which the total of the payments made by Cawley was less than in

any other two-year period; this interpretation accurately reflects the record.

2. Though the Legislature has now repealed Article 46a, the effect on its successor statute, Texas Family Code, Section 15.02, V.T. C.A. (1975), will be equally disastrous. Section 15.02 states, in pertinent part:
   "A petition requesting termination of the parent-child relationship with respect to a parent who is not the petitioner may be granted if the court finds that:
   "(1) the parent has:
   " .   .   .

The plain words of the statute indicate that it is the duty of the court to examine the payments of the errant parent over the two-year period to determine if, during that period, he has contributed substantially to the support of the child, with consideration given to the financial abilities of the parent. A single full support payment, or even a token block of such payments, made in compliance with the order of the court should not, and in the opinion of this writer does not, begin a new two-year period running. Neither should continuous payments over the two-year period prevent adoption if those payments are less than ordered by the court and insignificant in light of the financial ability of the parent. Rather, the payments made during the two-year period should be merely a factor taken into consideration as a part of the support provided by the parent to determine if he has, in view of his ability, substantially contributed to the support of his child over the period under consideration.

Certainly there was a substantial failure to support during the first three months after the divorce in the instant case, since no payments at all were made for any of these months. If the statutory period began to run after *any* of these deficiencies, there would be a full two-year period of nonsupport to consider prior to the filing of the adoption petition. For example, if the two-year statutory period is computed to begin on the month of Cawley's third failure to make payment, June 1971, it is seen that Cawley paid only $1,470 out of a total ordered of $3,760; that he made full payment on only seven months, made grossly inadequate payments on two months and made no payments whatsoever on the remaining fifteen months. Further, it is uncontroverted that in any continuous two-year period carved out of the twenty-nine months listed in the majority opinion between the time of the divorce and the filing of the adoption petition, there were fifteen months when no support was paid. Out of the twenty-nine months before the adoption, without consideration to carving out a two-year period, *eighteen* payments were ignored. Of the payments that were made, three were grossly deficient. In all, Cawley paid only $1,685 out of a total of $4,365 which he was ordered to pay by the court; all this despite the fact Cawley was regularly employed for this period with a total income in excess of $22,000. Significantly, the record is totally devoid of any reasonable explanation for Cawley's failure to support his minor child commensurate with his ability.

Given these undisputed facts, this writer cannot say the trial court abused its discretion in granting this adoption; this is especially true in view of the fact the trial court specifically found the adoption would be in the best interest of the child.

Perhaps the most unfortunate aspect of the majority's interpretation of Article 46a is the emasculating effect its decision will have on adoption generally. The construction of the statute adopted by the majority

---

"(E) failed to support the child in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition; . . ."

Though the Legislature has eliminated the word "substantially" from Section 15.02, it has retained the qualifying phrase "in accordance with his ability." This indicates that the fact of a parent's failure to support may vary depending on the deviation from the court's order as contrasted to the financial ability of the parent. For example, if a father whose annual income is $100,000 and who is ordered to contribute $200 per month for the support of his minor child, provides only $20 monthy, certainly this would be a failure to support "in accordance with his ability."

The interpretation advanced by the majority, however, would, since it requires a *complete* failure to support during the applicable period, eliminate from consideration the financial ability of the parent.

It is also significant that the Legislature, in Section 15.02(1)(E), has shortened the applicable period of nonsupport to one year. The obvious purpose is to greatly abbreviate the required time frame and lessen the requirements placed upon the individual providing for the essential needs of a minor child and praying for adoption. It is perceived that the Legislature clearly recognizes that the paramount consideration in adoption proceedings is the welfare and best interest of the child.

would, since a full payment interrupts the running of the two-year period, allow a neglectful parent to make a single full payment once every two years and thereby indefinitely prevent adoption by a suitable person who sincerely desires to care for the financial and emotional needs of the child. We are all well aware that a vengeful divorced spouse will often go to extreme lengths to disrupt the family life of his ex-spouse, even to the extent of using his own child as a tool to disrupt the newly formed family. It is also well recognized that one of a child's strongest emotional needs is the need for a stable family environment; the need to feel completely and totally a part of the family with which the child lives. The majority, in emphasizing the rights of the neglectful parent, appears to ignore the best interest of the child, and in effect allows the child to become an unwilling pawn subject to the spiteful machinations of the divorced spouse. A vengeful ex-spouse, for whatever ill-begotten motive, can now effectively and indefinitely block the adoption of his child, thereby disrupting the child's family life and emotional stability, simply by making periodic token payments.

The judgments of the courts below should be affirmed.

STEAKLEY, J., joins in this dissent.