Jerry Daniel RODRIGUEZ & Jennifer Lee Turner, Appellants,

v.

LUTHERAN SOCIAL SERVICES OF TEXAS, INC., Appellee.

No. 04–90–00485–CV.

Court of Appeals of Texas, San Antonio.

July 10, 1991.

Rehearing Denied Aug. 21, 1991.

Kay Martinez, San Antonio, for appellants.

Victor Hugo Negron, Jr., Law Offices of Ritter & Negron, San Antonio, for appellee.

Before BUTTS and GARCIA, JJ., and T.C. CHADICK, Assigned Justice.

OPINION

T.C. CHADICK, Assigned Justice [1].

This is an appeal by birth parents from a default decree terminating the parental relationship between them and the child subject of this suit and orders made in connection therewith. The decree of the trial court is reversed and remanded.

The appellants are Jerry Daniel Rodriguez and Jennifer Lee Turner. The appellee is Lutheran Social Services of Texas, Inc., a private not-for-profit organization licensed by the Texas Department of Human Services and authorized to place children for adoption. The appellants have briefed six points of error and the appellee has responded. All points have been carefully examined, but only the sixth needs to be discussed. The sixth point of error is:

The trial court erred in entering the judgment based on a petition for termination that did not comply with the legal requirements for such a petition.

Discussion of the point of error will be facilitated by a brief survey of the statutory treatment of the nuclear family and the public policy it projects. Legislation in this field is primarily codified and incorporated in the Texas Family Code. The subject of Title 2 of the Code is parent and child. Subtitle A thereunder embraces legislation on the parent/child relationship and suits affecting that relationship. Chapter 13 of Subtitle A pertains to paternity suits; Chapter 14 is applicable to conservatorship, possession and support of children; Chap-

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

ter 15 relates to termination of the parent/child relationship; and Chapter 16 is on adoptions. These provisions are indicative of the comprehensive range of legislation bearing upon the subject. Title 2, in general, is the source of statutory regulation, if any, applicable to the parent/child relationship treated in this appeal.

Prior to institution of the suit, Rodriguez and Turner, on May 2, 1990, talked with managerial employees of Lutheran Social Services and gave actual oral notice that Rodriguez repudiated and retracted his affidavit of waiver of interest. Rodriguez's father telephoned the same notice to Lutheran Social Services. Rodriguez, his parents, and Turner consulted with a family law attorney in Dallas in the late afternoon of May 2. In the early afternoon of May 3, 1990, this attorney phoned the attorney for Lutheran Social Services and informed him that she, the attorney, had been retained by Rodriguez and Turner, and that both wished to revoke their respective affidavits and contest any action to terminate the parent/child relationship between them and the subject baby.

The attorney retained by Rodriguez and Turner assumed a termination suit had been filed in Bexar County and called the district clerk attempting to ascertain a pending cause number under which revocation pleadings could be filed. A cause number could not be furnished, as the suit had not then been filed by Lutheran Social Services. On the afternoon of May 3, 1990, at 1:43 p.m. and subsequent to the conversation between the parties' legal counsel, Lutheran Social Services filed the original petition herein with attached affidavits of relinquishment and waiver of interest. Each affidavit contained a waiver of citation and service. Immediately after filing, the petition for termination was presented to a district court of Bexar County, and at the conclusion of the hearing the judge of the court signed the default decree of termination. Among other things, the decree appointed Lutheran Social Services both guardian ad litem and managing conservator of the child.

Neither prior to nor during the trial was the trial judge informed of the retraction conversation between legal counsel for the parties or of other notice in which Lutheran Social Services was advised that Rodriguez and Turner wished to revoke their respective affidavits and contest the termination proceeding.

The content of a petition for appointment of a non-parent managing conservator with authority to consent to adoption of a child, such as Lutheran Social Services' petition in this instance, must, by the terms of TEX.FAM.CODE ANN § 11.08(d) (Vernon Supp.1991), contain:

(1) A sworn allegation that there has been compliance with Chapter 45 Human Resources Code; or

(2) If there has not been compliance with Chapter 45 Human Resources Code a sworn statement of the particular reasons for the noncompliance.

The petition does not contain the required allegations or the particular reasons for noncompliance. Since this is a default judgment, TEX.R.CIV.P. 90 has no application and the appellants are not barred from urging this lapse as error on appeal. *See Stoner v. Thompson,* 578 S.W.2d 679 (Tex. 1979).

There can be no doubt of the application of section 11.08(d) in this case. A managing conservator, not the parent of the child in question, is empowered to consent to an adoption of a child if the parent/child relationship between the parent and child has been terminated. TEX.FAM.CODE ANN. § 14.02(b)(8) (Vernon Supp.1991). The record shows that Lutheran Social Services sued to be appointed managing conservator and as such was empowered by law to consent to the adoption of the child subject to the suit. The appellants reason that the statute placed upon Lutheran Social Services the mandatory duty to make the allegations required by section 11.08(d) or excuse compliance as part of its petition, and having failed to do so the petition does not state a statutory cause of action.

It is said in *Stoner* that:

In determining whether a cause of action was pled, plaintiff's pleading must be

adequate for the court to be able, from an examination of the plaintiff's pleadings alone, to ascertain with reasonable certainty and without resorting to information aliunde the elements of plaintiff's cause of action and the relief sought with sufficient information upon which to base a judgment. *C & H Transportation Company v. Wright*, 396 S.W.2d 443 (Tex.Civ.App.1965, writ ref'd n.r.e.). Mere formalities, minor defects, and technical insufficiencies will not invalidate a default judgment where the petition states a cause of action and gives "fair notice" to the opposing party of the relief sought. *Edwards Feed Mill v. Johnson*, 158 Tex. 313, 311 S.W.2d 232 (1958).

*Stoner*, 578 S.W.2d at 683.

An element in a cause of action for termination of the parental relationship is compliance with Chapter 45, Human Resources Code. To plead a cause of action for termination of the relationship requires allegations prescribed by statute, including those set out in section 11.08(d). Examination of Lutheran Social Services' petition does not reveal that a cause of action in compliance with law was pled. *See In re S.R.M.*, 601 S.W.2d 766 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.). In that respect the petition was defective and will not support a default judgment. *See C & H Transport Co. v. Wright*, 396 S.W.2d 443 (Tex.Civ.App.—Tyler 1965, writ ref'd n.r.e.).

> Lutheran Social Services' brief states:
> Appellee agrees with Appellants' statement of the law, that "[t]he language of a statute is presumed to have been carefully selected, and every word or phrase is presumed to have been used intentionally, with a meaning and a purpose."

*See Perkins v. State*, 367 S.W.2d 140, 146 (Tex.1963); *In re S.H.A.*, 728 S.W.2d 73, 83 (Tex.App.—Dallas 1987, no writ). Lutheran Social Services undertakes to avoid the consequence of its failure to comply with the mandatory pleading provision by this argument:

> Reference to both Chapter 45, Human Resources Code, also known as the Texas

version of the Interstate Compact for the Placement of Children, and to the Texas session laws of 1989, reveal that the verification sought by § 11.08(d) is for the purpose of obtaining compliance with the Interstate Compact for the Placement of Children "regarding the interstate placement of children." 1989 Texas Session Law Service, Chapter 630, § 1, at 2103 (Vernon). This is not an interstate placement of a child.

Evidence produced at the motion for new trial hearing is cited to support the non-interstate contention. The testimony alluded to is that of Colette Marie Ulrich, an employee of Lutheran Social Services, who on direct examination testified:

> Q. What did you tell them in regard to the openness of the adoption and where the couple would reside?
>
> A. Well, from the very beginning on January 12th, when you explain open adoption and what it is and what it is not, you also explain that because Lutheran is a statewide agency, that couples can come from anywhere. They also knew that these—that the couples—that the couple they chose did not reside there. That he was, in fact, in the armed services somewhere in the state. He might—I may have even told him that—I think they believe he is in the Navy. I think he refers to the fact he's in the Navy.

The quoted testimony, if relevant at all, does not clearly and convincingly show that the proceedings did not involve the interstate placement of a child. The evidence in support of termination must be clear and convincing before a court may involuntarily terminate a parent's rights. *Santosky v. Kramer*, 455 U.S. 745, 747, 102 S.Ct. 1388, 1391, 71 L.Ed.2d 599 (1982); *Richardson v. Green*, 677 S.W.2d 497, 500 (Tex.1984). The witness' language did not convey the thought that the witness was, on the basis of her own knowledge, asserting that the prospective adoptive parents resided in the state of Texas. Fairly construed, the witness was giving her opinion of what was known to the appellants.

**156**

The testimony, interpreted most favorably to Lutheran Social Services, is that the prospective adoptive parent was in the armed services somewhere in Texas. That bare fact creates inferences tending to prove both that he was or was not a resident of the state. It might be inferred or speculated that being in the armed forces in Texas, he was also a resident of Texas. However, since residence is a matter of intent it does not necessarily follow that a person in the armed forces and stationed in Texas is a resident. The testimony does not show his intent or actual place of residence. The evidence as a whole leaves doubt as to residence and is too equivocal to satisfy a strict mandatory compliance with § 11.08(d). It cannot be said that the evidence renders immaterial the pleading requirement and that error in that respect is harmless. In *Holick v. Smith,* 685 S.W.2d 18, 20–21 (Tex.1985), it is said:

> ... [T]ermination proceedings should be strictly scrutinized, and involuntary termination statutes are strictly construed in favor of the parent. *See Cawley v. Allums,* 518 S.W.2d 790, 792 (Tex.1975); *Heard v. Bauman,* 443 S.W.2d 715, 719 (Tex.1969).

Appellants' sixth point of error is sustained. The questions raised by appellants' other points have been considered and are overruled. The questions probably will not arise in a new trial and no useful purpose will be served by discussing them.

Accordingly, the judgment of the trial court is reversed and the cause is remanded for new trial.