

**NUMBER 13-09-600-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

### IN THE INTEREST OF R.L.T. AND C.R.T., CHIILDREN

**On appeal from the 117th District Court
of Nueces County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Wittig[1]
Memorandum Opinion by Justice Wittig**

This is an accelerated appeal from a judgment terminating the parental rights of Brandy Long Seevers, appellant, to her two daughters, C.T. and R.T. Appellant's court-appointed counsel filed a brief in which he concluded that this appeal is wholly frivolous and without merit. The brief meets the requirements of *Anders v. California*, 386 U.S. 738, 744 (1967), in that it presents a professional evaluation of why there are no

---

[1] Retired Fourteenth Court of Appeals Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. TEX. GOV'T CODE ANN. § 74.003 (Vernon 2005).

arguable grounds for advancing the appeal.  *See Porter v. Tex. Dep't of Protective & Regulatory Servs.*, 105 S.W.3d 52, 56 (Tex. App.–Corpus Christi 2003, no pet.); *Stafford v. State*, 813 S.W.2d 503, 510 n.3 (Tex. Crim. App. 1991).  Upon receiving a "frivolous appeal" brief, appellate courts must conduct "a full examination of all the proceedings to decide whether the case is wholly frivolous."  *Penson v. Ohio*, 488 U.S. 75, 80 (1988).

Appellant's appointed counsel delivered a copy of his brief to Seevers, who was notified of her right to seek other counsel or file a pro se brief.   Seevers timely filed a pro se brief.   Appellees did not file any brief.

## I. VISITATION RIGHTS

In her pro se brief, Seevers argues a request for supervised visitation rights.   She states:  "Please understand I am not asking to remove my daughters from where they are."   Seevers also states her children are currently in a loving, stable environment and that she agrees healthy stability is in the children's best interest.   Nevertheless, she wants the opportunity to know her children and have them know her.   Someday in the future the children may decide "to allow me the honor of being a part of their day to day lives."

Because a termination of parental rights necessarily includes a parent's visitation rights, we view the request for visitation rights as a challenge to the sufficiency of the evidence to support the trial court's termination.   *See Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976) (holding that termination does not merely end the right of the parent to physical possession of the child, it terminates forever the natural right which exists between parents and their children).

2

## II. STANDARD OF REVIEW

The natural right existing between parents and their children is of constitutional dimensions. *Holick v. Smith*, 685 S.W.2d 18, 20-21 (Tex. 1985); *In re G.M.*, 596 S.W.2d 846, 846 (Tex. 1980); *Wiley*, 543 S.W.2d at 352. Indeed, "involuntary termination of parental rights involves fundamental constitutional rights." *In re G.M.*, 596 S.W.2d at 846. This natural parental right has been characterized as "essential," "a basic civil right of man," and "far more precious than property rights." *See Stanley v. Illinois*, 405 U.S. 645, 651 (1976). A termination decree is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers with respect to each other except for the child's right to inherit. *Wiley*, 543 S.W.2d at 352; *see* TEX. FAM. CODE ANN. § 161.206(b) (Vernon 2008). Moreover, the evidence in support of termination must be clear and convincing before a court may involuntarily terminate a parent's rights. *Santosky v. Kramer*, 455 U.S. 745, 747, (1980); *Richardson v. Green*, 677 S.W.2d 497, 500 (Tex. 1984). Consequently, termination proceedings should be strictly scrutinized, and involuntary termination statutes are strictly construed in favor of the parent. *See Cawley v. Allums*, 518 S.W.2d 790, 792 (Tex. 1975); *Heard v. Bauman*, 443 S.W.2d 715, 719 (Tex. 1969).

In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most

favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* This does not mean that a court must disregard all evidence that does not support the finding. *Id.* Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence. *Id.* Clear and convincing evidence is "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979) (per curiam).

In a factual sufficiency review, a court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266. The inquiry must be "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *Id.* (citing *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). We should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

There are two predicates to parental termination under section 161.001 of the Texas Family Code. *Id.* at 256. The first is that one or more courses of parental

4

conduct must be established. TEX. FAM. CODE ANN. § 161.001(1) (Vernon 2008). The second is that termination must be in the best interest of the children. *Id.* § 161.001(2).

The trial court found by clear and convincing evidence the following grounds for termination of the parental rights of Seevers: (1) she knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child, *id.* § 161.001(1)(D); (2) she engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child, *id.* § 161.001(1)(E); (3) she has been convicted or has been placed on community supervision, including deferred adjudication community supervision, for being criminally responsible for the death or serious injury of a child under section 22.04 of the penal code, *id.* § 161.001(1)(L); (4) she voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months, *id.* § 161.001(1)(C); and (5) that termination is in the best interest of the children. *Id.* § 161.001(2).

### III. DISCUSSION

C.T. and R.T. were two years old when they were admitted to a children's hospital on January 19, 2007. C.T. presented with twenty-two bruises, an acute subdural hematoma from a head injury, abrasions, puncture wounds, and missing hair. R.T. presented with twenty-four bruises, a toe infection, abrasions, a basal skull fracture, a right arm fracture, a leg fracture, and missing hair.

Carole Deline, M.D., a child neurologist, testified that C.T. had emergency surgery to address the brain swelling from a large subdural hematoma. The surgery saved the

child's life.   Dr. Deline testified that the force necessary to cause the injury was not consistent with Seevers' explanation that the child fell out of bed, or an accident involving a grocery cart, or that the child bumped against a wall.   According to Dr. Deline, the injury was a severe force injury.   Dr. Deline testified that R.T. had a skull fracture, a forearm fracture, and a tibia fracture.   In Dr. Deline's opinion, the number of bruises together with the pattern of bruises and fractures on the two children were outside the realm of normal toddler injuries, although not every single bruise was the result of intentional conduct.

Nancy Harper, M.D., pediatric medical expert, opined that C.T. suffered "abusive head trauma.   This is inflicted injury on multiple surfaces of her body."   She testified that C.T. had been in "extreme endangerment."   According to Dr. Harper, R.T. had multiple sites of injury to her head on multiple planes which were not consistent with a child falling down or a crib fall.   R.T. had an inflicted ear injury, a significant fracture of the occipital bone all the way down into the table of the base of her skull.   R.T. also had an abdominal injury, multiple fractures in different stages of healing, and multiple planes of trauma from "inflicted injury."

CPS special investigator, Sidney Lyle, testified that the number of bruises and fractures, the pattern of bruises and locations of the injuries, were not the result of normal childhood activities or accidental, but were intentional injuries which amounted to child abuse.   The children were with Seevers or under her control at all material times.

Seevers testified that she was serving two years of imprisonment because of a prior injury to another child involving spanking with a fly swatter.   At the time of trial, she was serving a ten-year sentence as a result of an injury to a child–C.T.   Reviewing all the

evidence in the light most favorable to the trial court's findings, we determine that a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *See In re J.F.C.*, 96 S.W.3d at 266.

Counsel for Seevers appropriately cross-examined all the witnesses and pointed out that some of the bruises were not necessarily intentionally inflicted. Counsel's cross-examination of Dr. Deline showed that Seevers brought C.T. in quickly for treatment of the child's head trauma. According to further testimony, C.T. could have fallen from a grocery cart to a hard floor. Some of the bruises could have been normal childhood injuries. Fair-skinned children, like C.T. and R.T., bruise more easily. The spiral fracture of RT's tibia is called a toddler's fracture, possibly from a crib injury.

Cross-examination of Dr. Harper showed that she had not seen the children when their injuries were fresh. According to further testimony, bruises on children are not uncommon and are difficult to date. Dr. Harper conceded that she was not testifying that every bruise was the result of abuse and that some of the bruises may have been caused by falls. Some of the fractures could have gone undetected by Seevers. R.T. had a normal CAT-scan of her stomach.

In Lyle's cross-examination, Lyle was not able to show in his records where Seevers changed her story. When Lyle interviewed Seevers, he could not determine why R.T. was squirming in her lap. Lyle could not say positively who committed the injuries to the children. Some of the bruising could have been accidental and could not be dated.

In cross-examination of the petitioner, counsel elicited the testimony that after

7

D.T.'s separation from Seevers, he did not observe any problem that required him to take the children to the doctor until the incident of January 19th.

Seevers testified R.T. sustained a cut toe in the bedroom. The bruise on C.T.'s leg was caused by her leg being stuck in the baby bed. C.T. also fell in the bath tub causing the head injury. On January 19, 2007, C.T. suffered a seizure, so Seevers took both children to the hospital while her husband, Kirk Seevers, went back to work. Seevers told CPS that C.T. fell out of bed. She told police that at the time of the fall C.T. was with Kirk. Seevers denied harming the children but admitted: "I'm guilty of not protecting them, that's what I'm guilty of."

Seevers also testified she had been taking parenting and cognitive classes to be a better mother when she gets out of the penitentiary. She asked the court not to terminate her parental rights and requested supervised visitation.

At the conclusion of the case, the trial court stated on the record that appellant lacked credibility, both when the events were occurring, and even as she testified in the courtroom during the trial.

We resolve disputed fact questions in favor of the finding if a reasonable factfinder could have done so, and we disregard all contrary evidence unless a reasonable factfinder could not have done so. *In re J.F.C.*, 96 S.W.3d at 266; *see City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005). We hold that the factfinder could reasonably have found by clear and convincing evidence the stated grounds for termination in the final judgment, including the finding that termination is in the best interest of the children. *See In re J.F.C.*, 96 S.W.3d at 266. We have carefully reviewed the appellate record,

8

counsel's brief, and appellant's pro se brief. We find nothing in the record that might arguably support this appeal. *See Porter,* 105 S.W.3d at 60. Because we have found no reversible error in this case, we agree with appellant's counsel that the appeal is wholly frivolous and without merit.

## IV. MOTION TO WITHDRAW

In accordance with *Anders*, counsel has filed a motion to withdraw. *See Anders*, 386 U.S. at 744; *see also In re Schulman*, 252 S.W.3d at 408 n.17 (citing *Jeffery v. State*, 903 S.W.2d 776, 779-80 (Tex. App.–Dallas 1995, no pet.) ("If an attorney believes the appeal is frivolous, he must withdraw from representing the appellant. To withdraw from representation, the appointed attorney must file a motion to withdraw accompanied by a brief showing the appellate court that the appeal is frivolous.") (citations omitted)). We grant counsel's motion to withdraw that was carried with the case. Within five days of the date of this Court's opinion, counsel is ordered to send a copy of the opinion and judgment to appellant and to advise appellant of her right to pursue a petition for review in the Texas Supreme Court. *See In re K.D.*, 127 S.W.3d 66, 68 n.3 (Tex. App.–Houston [1st Dist.] 2003, no pet.).

## V. CONCLUSION

The judgment of the trial court is affirmed.

DON WITTIG
Justice

Delivered and filed the
5th day of May, 2011.

9