NUMBER 13-09-600-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI - EDINBURG  

                                                                                                                     


 

IN THE INTEREST OF
R.L.T. AND C.R.T., CHIILDREN 

                                                                                                                     
  

 

On appeal from the 117th
District Court 

of Nueces County,
Texas.

                                                                                                                     


 

MEMORANDUM OPINION

 

Before Chief Justice
Valdez and Justices Rodriguez and Wittig[1]

Memorandum Opinion by
Justice Wittig

 

This is an accelerated appeal from a
judgment terminating the parental rights of Brandy Long Seevers, appellant, to
her two daughters, C.T. and R.T.  Appellant’s court-appointed counsel filed a
brief in which he concluded that this appeal is wholly frivolous and without
merit.  The brief meets the requirements of Anders v. California, 386
U.S. 738, 744 (1967), in that it presents a professional evaluation of why
there are no arguable grounds for advancing the appeal.  See Porter v. Tex.
Dep’t of Protective & Regulatory Servs., 105 S.W.3d 52, 56 (Tex.
App.–Corpus Christi 2003, no pet.); Stafford v. State, 813 S.W.2d 503,
510 n.3 (Tex. Crim. App. 1991).  Upon receiving a “frivolous appeal” brief,
appellate courts must conduct “a full examination of all the proceedings to
decide whether the case is wholly frivolous.”  Penson v. Ohio, 488 U.S.
75, 80 (1988).

            Appellant’s appointed counsel delivered a
copy of his brief to Seevers, who was notified of her right to seek other
counsel or file a pro se brief.  Seevers timely filed a pro se brief. 
Appellees did not file any brief.

                                                             
I.  Visitation Rights

            In her pro se brief, Seevers argues a request
for supervised visitation rights.  She states:  “Please understand I am not
asking to remove my daughters from where they are.”  Seevers also states her
children are currently in a loving, stable environment and that she agrees
healthy stability is in the children’s best interest.  Nevertheless, she wants
the opportunity to know her children and have them know her.  Someday in the
future the children may decide “to allow me the honor of being a part of their
day to day lives.”  

            Because a termination of parental rights
necessarily includes a parent’s visitation rights, we view the request for
visitation rights as a challenge to the sufficiency of the evidence to support
the trial court’s termination.  See Wiley v. Spratlan, 543 S.W.2d 349,
352 (Tex. 1976) (holding that termination does not merely end the right of the
parent to physical possession of the child, it terminates forever the natural
right which exists between parents and their children).

                                                            II.  Standard of Review

            The natural right existing between parents
and their children is of constitutional dimensions.  Holick v. Smith,
685 S.W.2d 18, 20-21 (Tex. 1985); In re G.M., 596 S.W.2d 846, 846 (Tex.
1980); Wiley, 543 S.W.2d at 352.  Indeed, “involuntary termination of
parental rights involves fundamental constitutional rights.”  In re G.M.,
596 S.W.2d at 846.  This natural parental right has been characterized as
“essential,” “a basic civil right of man,” and “far more precious than property
rights.”  See Stanley v. Illinois, 405 U.S. 645, 651 (1976).  A
termination decree is complete, final, irrevocable, and divests for all time
that natural right as well as all legal rights, privileges, duties, and powers
with respect to each other except for the child’s right to inherit.  Wiley,
543 S.W.2d at 352; see Tex. Fam.
Code Ann. § 161.206(b) (Vernon 2008).  Moreover, the evidence in support
of termination must be clear and convincing before a court may involuntarily
terminate a parent’s rights.  Santosky v. Kramer, 455 U.S. 745, 747,
(1980); Richardson v. Green, 677 S.W.2d 497, 500 (Tex. 1984). 
Consequently, termination proceedings should be strictly scrutinized, and
involuntary termination statutes are strictly construed in favor of the
parent.  See Cawley v. Allums, 518 S.W.2d 790, 792 (Tex. 1975); Heard
v. Bauman, 443 S.W.2d 715, 719 (Tex. 1969).

            In a legal sufficiency review, a court should
look at all the evidence in the light most favorable to the finding to
determine whether a reasonable trier of fact could have formed a firm belief or
conviction that its finding was true.  In re J.F.C., 96 S.W.3d 256, 266
(Tex. 2002).  To give appropriate deference to the factfinder’s conclusions and
the role of a court conducting a legal sufficiency review, looking at the
evidence in the light most favorable to the judgment means that a reviewing
court must assume that the factfinder resolved disputed facts in favor of its
finding if a reasonable factfinder could do so.  Id.  A corollary to
this requirement is that a court should disregard all evidence that a
reasonable factfinder could have disbelieved or found to have been incredible. 
Id.  This does not mean that a court must disregard all evidence that
does not support the finding.  Id.  Disregarding undisputed facts that
do not support the finding could skew the analysis of whether there is clear
and convincing evidence.  Id.  Clear and convincing evidence is “that
measure or degree of proof which will produce in the mind of the trier of fact
a firm belief or conviction as to the truth of the allegations sought to be
established.”  State v. Addington, 588 S.W.2d 569, 570 (Tex. 1979) (per
curiam).

            In a factual sufficiency review, a court of
appeals must give due consideration to evidence that the factfinder could
reasonably have found to be clear and convincing.  In re J.F.C., 96
S.W.3d at 266.  The inquiry must be “whether the evidence is such that a
factfinder could reasonably form a firm belief or conviction about the truth of
the State’s allegations.”  Id. (citing In re C.H., 89 S.W.3d 17,
25 (Tex. 2002)).  We should consider whether disputed evidence is such that a
reasonable factfinder could not have resolved that disputed evidence in favor
of its finding.  Id.  If, in light of the entire record, the disputed
evidence that a reasonable factfinder could not have credited in favor of the
finding is so significant that a factfinder could not reasonably have formed a
firm belief or conviction, then the evidence is factually insufficient.  Id.


            There are two predicates to parental
termination under section 161.001 of the Texas Family Code.  Id. at
256.  The first is that one or more courses of parental conduct must be
established.  Tex. Fam. Code Ann. §
161.001(1) (Vernon 2008).  The second is that termination must be in the best
interest of the children.  Id. § 161.001(2).

            The trial court found by clear and convincing
evidence the following grounds for termination of the parental rights of
Seevers:  (1) she knowingly placed or knowingly allowed the child to remain in
conditions or surroundings which endanger the physical or emotional well-being
of the child, id. § 161.001(1)(D); (2) she engaged in conduct or
knowingly placed the child with persons who engaged in conduct which endangers
the physical or emotional well-being of the child, id. § 161.001(1)(E);
(3) she has been convicted or has been placed on community supervision,
including deferred adjudication community supervision, for being criminally
responsible for the death or serious injury of a child under section 22.04 of
the penal code, id. § 161.001(1)(L); (4) she voluntarily left the child
alone or in the possession of another without providing adequate support of the
child and remained away for a period of at least six months, id. §
161.001(1)(C); and (5) that termination is in the best interest of the
children.  Id. § 161.001(2).

                                                            III.  Discussion

            C.T. and R.T. were two years old when they
were admitted to a children’s hospital on January 19, 2007.  C.T. presented
with twenty-two bruises, an acute subdural hematoma from a head injury,
abrasions, puncture wounds, and missing hair.  R.T. presented with twenty-four
bruises, a toe infection, abrasions, a basal skull fracture, a right arm
fracture, a leg fracture, and missing hair.  

Carole Deline, M.D., a child
neurologist, testified that C.T. had emergency surgery to address the brain
swelling from a large subdural hematoma.  The surgery saved the child’s life. 
Dr. Deline testified that the force necessary to cause the injury was not
consistent with Seevers’ explanation that the child fell out of bed, or an
accident involving a grocery cart, or that the child bumped against a wall. 
According to Dr. Deline, the injury was a severe force injury.  Dr. Deline
testified that R.T. had a skull fracture, a forearm fracture, and a tibia
fracture.  In Dr. Deline’s opinion, the number of bruises together with the
pattern of bruises and fractures on the two children were outside the realm of
normal toddler injuries, although not every single bruise was the result of
intentional conduct.

            Nancy Harper, M.D., pediatric medical expert,
opined that C.T. suffered “abusive head trauma.  This is inflicted injury on
multiple surfaces of her body.”  She testified that C.T. had been in “extreme
endangerment.”  According to Dr. Harper, R.T. had multiple sites of injury to
her head on multiple planes which were not consistent with a child falling down
or a crib fall.  R.T. had an inflicted ear injury, a significant fracture of
the occipital bone all the way down into the table of the base of her skull. 
R.T. also had an abdominal injury, multiple fractures in different stages of
healing, and multiple planes of trauma from “inflicted injury.”

            CPS special investigator, Sidney Lyle,
testified that the number of bruises and fractures, the pattern of bruises and
locations of the injuries, were not the result of normal childhood activities
or accidental, but were intentional injuries which amounted to child abuse. 
The children were with Seevers or under her control at all material times.

            Seevers testified that she was serving two
years of imprisonment because of a prior injury to another child involving
spanking with a fly swatter.  At the time of trial, she was serving a ten-year
sentence as a result of an injury to a child–C.T.  Reviewing all the evidence
in the light most favorable to the trial court’s findings, we determine that a
reasonable trier of fact could have formed a firm belief or conviction that its
findings were true.  See In re J.F.C., 96 S.W.3d at 266.

            Counsel for Seevers appropriately
cross-examined all the witnesses and pointed out that some of the bruises were
not necessarily intentionally inflicted.  Counsel’s cross-examination of Dr.
Deline showed that Seevers brought C.T. in quickly for treatment of the child’s
head trauma.  According to further testimony, C.T. could have fallen from a
grocery cart to a hard floor.  Some of the bruises could have been normal
childhood injuries.  Fair-skinned children, like C.T. and R.T., bruise more
easily.  The spiral fracture of RT’s tibia is called a toddler’s fracture,
possibly from a crib injury.   

            Cross-examination of Dr. Harper showed that
she had not seen the children when their injuries were fresh.  According to
further testimony, bruises on children are not uncommon and are difficult to
date.  Dr. Harper conceded that she was not testifying that every bruise was
the result of abuse and that some of the bruises may have been caused by
falls.  Some of the fractures could have gone undetected by Seevers.  R.T. had
a normal CAT-scan of her stomach.

            In Lyle’s cross-examination, Lyle was not
able to show in his records where Seevers changed her story.  When Lyle
interviewed Seevers, he could not determine why R.T. was squirming in her lap. 
Lyle could not say positively who committed the injuries to the children.  Some
of the bruising could have been accidental and could not be dated.

            In cross-examination of the petitioner, counsel
elicited the testimony that after D.T.’s separation from Seevers, he did not
observe any problem that required him to take the children to the doctor until
the incident of January 19th.

            Seevers testified R.T. sustained a cut toe in
the bedroom.  The bruise on C.T.’s leg was caused by her leg being stuck in the
baby bed.  C.T. also fell in the bath tub causing the head injury.  On January
19, 2007, C.T. suffered a seizure, so Seevers took both children to the
hospital while her husband, Kirk Seevers, went back to work.  Seevers told CPS
that C.T. fell out of bed.  She told police that at the time of the fall C.T.
was with Kirk.  Seevers denied harming the children but admitted:  “I’m guilty
of not protecting them, that’s what I’m guilty of.”

            Seevers also testified she had been taking
parenting and cognitive classes to be a better mother when she gets out of the
penitentiary.  She asked the court not to terminate her parental rights and
requested supervised visitation.

            At the conclusion of the case, the trial
court stated on the record that appellant lacked credibility, both when the
events were occurring, and even as she testified in the courtroom during the
trial.

            We resolve disputed fact questions in favor
of the finding if a reasonable factfinder could have done so, and we disregard
all contrary evidence unless a reasonable factfinder could not have done so.  In
re J.F.C., 96 S.W.3d at 266; see City of Keller v. Wilson, 168
S.W.3d 802, 817 (Tex. 2005).  We hold that the factfinder could reasonably have
found by clear and convincing evidence the stated grounds for termination in
the final judgment, including the finding that termination is in the best
interest of the children.  See In re J.F.C., 96 S.W.3d at 266.  We
have carefully reviewed the appellate record, counsel's brief, and appellant's
pro se brief. We find nothing in the record that might arguably support this
appeal. See Porter, 105 S.W.3d at 60.  Because we have found no
reversible error in this case, we agree with appellant's counsel that the
appeal is wholly frivolous and without merit.










IV.  Motion To
Withdraw

In accordance with Anders,
counsel has filed a motion to withdraw. See Anders, 386 U.S. at 744; see
also In re Schulman, 252 S.W.3d at 408 n.17 (citing Jeffery v. State,
903 S.W.2d 776, 779-80 (Tex. App.–Dallas 1995, no pet.) (“If an attorney
believes the appeal is frivolous, he must withdraw from representing the
appellant.  To withdraw from representation, the appointed attorney must file a
motion to withdraw accompanied by a brief showing the appellate court that the
appeal is frivolous.”) (citations omitted)).  We grant counsel’s motion to
withdraw that was carried with the case.  Within five days of the date of this
Court’s opinion, counsel is ordered to send a copy of the opinion and judgment
to appellant and to advise appellant of her right to pursue a petition for
review in the Texas Supreme Court.  See In re K.D., 127 S.W.3d 66, 68
n.3 (Tex. App.–Houston [1st Dist.] 2003, no pet.).

                                                                        V.  Conclusion

            The judgment of the trial court is affirmed.

 

 

                                                                        DON
WITTIG

                                                                                    Justice

 

Delivered and filed
the 

5th day of May, 2011.

 









[1] Retired Fourteenth Court of Appeals
Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme
Court of Texas pursuant to the government code.  Tex. Gov’t Code Ann. § 74.003 (Vernon 2005).