Gerald Porter v. Texas Department of Protective and Regulatory Services






NUMBER 13-02-00014-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

 



GERALD PORTER, Appellant,



v.



TEXAS DEPARTMENT OF PROTECTIVE

AND REGULATORY SERVICES, Appellee.

 


On appeal from the 25th District Court of Gonzales County, Texas.

 



O P I N I O N

Before Justices Hinojosa, Yañez, and Garza

Opinion by Justice Hinojosa



 Appellant, Gerald Porter, appeals from the trial court's order terminating his parental rights with his minor children, C.L.P.,
S.D.P., M.P., and T.P. 

A. Background and Procedural History


 In the early morning of January 1, 2001, appellant was celebrating the new year. During the celebration, a single-shot
twelve-gauge shotgun discharged, wounding and killing Carmen Eaton, the mother of C.L.P., S.D.P., M.P., and T.P. 
Appellant was indicted for Eaton's murder. (1) As a result of appellant's actions, the children were removed from appellant's
home by appellee, the Texas Department of Protective and Regulatory Services ("Department").

 The Department brought suit to terminate appellant's parental rights to his children. Following a bench trial, the trial court
signed a Decree of Termination on December 14, 2001. On January 14, 2002, the trial court filed findings of fact and
conclusions of law which state, in relevant part:

 


 Gerald Porter knowingly placed and knowingly allowed each of the children to remain in conditions and surroundings
which endanger the physical and emotional well-being of each of the children.




 


 Gerald Porter engaged in conduct which endangers the physical and emotional well-being of each of the children.


 



 


 Gerald Porter knowingly engaged in criminal conduct that has resulted in his conviction of an offense and confinement
and imprisonment and inability to care for each of the children for not less than two years from the date of filing the
petition, January 3, 2001.




 


 Termination of the parent child relationship between Gerald Porter and each of the children is in the best interest of each
of the children.




B. Counsel's Brief 


 Appellant's court-appointed counsel filed a brief in which he concluded that this appeal is wholly frivolous and without
merit. The brief meets the requirements of Anders v. California, 386 U.S. 738 (1967), as it presents a professional
evaluation of why there are no arguable grounds for advancing the appeal. See Stafford v. State, 813 S.W.2d 503, 510 n.3
(Tex. Crim. App. 1991). Upon receiving a "frivolous appeal" brief, appellate courts must conduct "a full examination of all
the proceeding[s] to decide whether the case is wholly frivolous." Penson v. Ohio, 488 U.S. 75, 80 (1988). 

 In the past, Anders briefs have been limited to criminal cases, but in 1998 the Texas Supreme Court extended Anders to the
civil realm, allowing attorneys to file Anders briefs in juvenile delinquency proceedings. See In re D.A.S., 973 S.W.2d 296,
299 (Tex. 1998). In permitting appellate counsel to file an Anders brief, the supreme court recognized that counsel, though
appointed to represent the appellant, had no duty to pursue a frivolous matter on appeal. Anders, 386 U.S. at 744; see In re
A.W.T., 61 S.W.3d 87, 88 (Tex. App.-Amarillo 2001, no pet.). 

 While the issue of whether the Anders procedure applies to parental termination cases is one of first impression in this
Court, other courts of appeals in this state have recently held that when appointed counsel represents an indigent client in a
parental termination appeal and concludes that there are no non-frivolous issues for appeal, counsel may file an Anders-type
brief. See In re E.L.Y., 69 S.W.3d 838, 841 (Tex. App.-Waco 2002, no pet.); In re K.S.M., 61 S.W.3d 632, 634 (Tex.
App.-Tyler 2001, no pet.); In re A.W.T., 61 S.W.3d 87, 88; see also Behrends v. Tex. Dep't of Protective & Regulatory
Servs., No. 03-01-00614-CV, 2002 Tex. App. LEXIS 4463 (Tex. App.-Austin June 21, 2002, no pet.) (not designated for
publication); but cf. Guerra v. Tex. Dep't of Protective & Regulatory Servs., 940 S.W.2d 295, 296 (Tex. App.-San Antonio
1997, no pet.) (Although unclear why counsel called his brief an Anders brief, the court declined to treat the brief in a civil,
parent-child termination case as an Anders brief).

 In allowing Anders-type briefs in parental termination cases, our sister courts have found that the rationale underlying
Anders is no less applicable to a civil matter than a criminal one in which counsel has been appointed to represent the
appellant. Appellant's counsel remains obligated to zealously pursue the rights and interests of his client, but the obligation
does not include arguing matters that are wholly frivolous and without merit. See In re A.W.T., 61 S.W.3d at 88; see also
Tex. Disciplinary R. Prof'l Conduct 3.01,reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 1998) (Tex.
State Bar R. art. X, § 9) ( "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless
the lawyer reasonably believes that there is a basis for doing so that is not frivolous"). In both criminal and parental
termination cases, counsel may conclude, after a thorough examination of the record, that the case lacks any non-frivolous
issues for appeal. Despite the civil or criminal nature of the appeal, counsel faces the same dilemma of having to diligently
represent a client who wants to appeal while still complying with counsel's ethical duties. In re K.S.M., 61 S.W.3d at 634. 
Accordingly, we hold that when appointed counsel represents an indigent client in a parental termination appeal and
concludes that there are no non-frivolous issues for appeal, counsel may file an Anders-type brief. 

 Upon reviewing counsel's brief, we noted he had not certified that he had served appellant with a copy of the brief and
informed him of his right to examine the appellate record and to file a pro se brief. See McMahon v. State, 529 S.W.2d
771, 772 (Tex. Crim. App. 1975). We abated the appeal to allow counsel to send appellant a copy of the brief and to notify
him of his right to review the record and to file a pro se brief, on or before September 6, 2002, if he so desired. On August
30, 2002, appellant filed a motion seeking an extension of time to file his pro se brief. We granted the motion. Appellant
has now filed a pro se brief.

C. Appellant's Pro se Brief


 In his pro se brief, appellant raises four issues. Appellant challenges the legal and factual sufficiency of the evidence to
establish that: (1) he knowingly placed or knowingly allowed the children to remain in conditions or surroundings which
endangered the physical or emotional well-being of the children; (2) he engaged in conduct or knowingly placed the
children with persons who engaged in conduct which endangers the physical or emotional well-being of the children; (3) he
knowingly engaged in criminal conduct that has resulted in his conviction and imprisonment and inability to care for the
children for not less than two years from the date of filing the petition; and (4) the termination is in the best interest of the
children.

1. Standard of Review


 The parent-child relationship is recognized and protected by law to such a degree that it is of federal constitutional
dimensions. Santosky v. Kramer, 455 U.S. 745, 758-59 (1982) (holding that the parent-child relationship is "far more
precious than any property right"). Because termination of parental rights is such a drastic remedy and is of such weight
and gravity, due process requires a heightened burden of proof of "clear and convincing evidence." See Tex. Fam. Code
Ann. §161.001 (Vernon 2002); In re G.M., 596 S.W.2d 846, 847 (Tex. 1980). "Clear and convincing evidence" is an
intermediate standard, falling between the preponderance standard of ordinary civil proceedings and the reasonable doubt
standard of criminal proceedings. In re G.M., 596 S.W.2d at 847. In applying the clear and convincing evidence standard
when reviewing the legal and factual sufficiency of the evidence, the appellate court must take into consideration whether
the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the matter on
which the State bears the burden of proof. In re J.F.C., 46 Tex. Sup. Ct. J. 328, 2002 Tex. LEXIS 215, at *22 (Dec. 31,
2002); In re C.H., 89 S.W. 3d 17, 25 (Tex. 2002).

 When an appellate court reviews the legal sufficiency of the evidence, it looks at all the evidence in the light most
favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that
the finding was true. In re J.F.C., 2002 Tex. LEXIS 215, at *22. This means that the reviewing court must assume that the
fact finder resolved disputed facts in favor of the finding, if a reasonable fact finder could do so. Id. at *23. A corollary to
this requirement is that the reviewing court should disregard all evidence that a reasonable fact finder could have
disbelieved or found to have been incredible. Id. This does not mean that a court must disregard all evidence that does not
support the finding, as this could skew the analysis of whether there is clear and convincing evidence. Id. If, after
conducting a legal sufficiency review of the evidence, the appellate court determines that no reasonable fact finder could
form a firm belief or conviction that the matter which must be proven is true, then it must conclude that the evidence is
legally insufficient. Id.

 When an appellate court reviews the factual sufficiency of the evidence, it must give due consideration to evidence that the
fact finder could reasonably have found to be clear and convincing. Id. at *24; In re C.H., 89 S.W. 3d at 25. The inquiry
must be "whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of
the State's allegations." In re J.F.C., 2002 Tex. LEXIS 215, at *24. The reviewing court should consider whether disputed
evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of the finding. Id. at
*25. If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of
the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the
evidence is factually insufficient. Id. The reviewing court should detail in its opinion why it has concluded that a
reasonable fact finder could not have credited disputed evidence in favor of the finding. Id.

2. Termination of Parental Rights

 In his second issue, appellant contends the evidence is legally and factually insufficient to support the trial court's finding
that he engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the
physical or emotional well-being of the children. See Tex. Fam. Code Ann. § 161.001(1)(E) (Vernon 2002).

 A court may order the involuntary termination of the parent-child relationship if it finds by clear and convincing evidence:
(1) one or more of the statutory grounds set forth in section 161.001(1) (Vernon 2002); and (2) that termination is in the
best interest of the child. Tex. Fam. Code Ann. §161.001 (Vernon 2002); Richardson v. Green, 677 S.W.2d 497, 499 (Tex.
1984). A non-exclusive list of factors that may be considered by the court in determining whether termination is in the best
interest of the child includes: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the
future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals
seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans
for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8)
the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9)
any excuse for the acts or omissions of the parent. Holley v. Adams, 544 S.W.2d 367, 372 (Tex. 1976).

 To support a finding under paragraph (E) of section 161.001(1), the evidence must show that the parent engaged in a
course of conduct which endangered the children's physical and emotional well-being. Tex. Dep't of Human Servs. v. Boyd,
727 S.W.2d 531, 534 (Tex.1987) (applying 15.02(1)(E), predecessor to subsection 161.001(1)(E)); Smith v. Sims, 801
S.W.2d 247, 251 (Tex. App.-Houston [14th Dist.] 1990, no writ). The source of the danger to the children must be the
parent's conduct, either his acts or omissions. Williams v. Tex. Dep't of Human Servs., 788 S.W.2d 922, 926 (Tex.
App.-Houston [1st Dist.] 1990, no pet.), overruled on other grounds by In re J.N.R., 982 S.W.2d 137, 143 (Tex.
App.-Houston [1st Dist.] 1998, no pet.). The term "endanger" means to expose to loss or injury; to jeopardize. In re M.C.,
917 S.W.2d 268, 270 (Tex. 1996). The parent's acts do not have to be directed at the children, nor do the children have to
actually suffer injury, to constitute conduct dangerous to the children's physical or emotional well-being. Id. The specific
danger to the children need not be established independently, but rather may be inferred from the parental misconduct. In
re B.R., 950 S.W.2d 113, 119 (Tex. App.-El Paso 1997, no pet.), overruled in part on other grounds by In re C.H., 89
S.W.3d 17, 26 (Tex. 2002). 

 Caldwell County Sheriff's Department Captain Randy Harkey testified that he was dispatched to appellant's residence on
January 1, 2001, in connection with the shooting. Upon entering the residence, he observed that the home was very
distressed and unclean. There were no bathrooms in the home. He observed a plastic food container in the bedroom
containing urine and feces. There were holes in the floors, and the house was very cold. Except for a small heater in the
bedroom, Captain Harkey was unable to locate any other source of heat in the house. The record establishes that appellant
shot and killed Carmen Eaton in the presence of the children.

 On the date of the shooting, appellant was on deferred adjudication community supervision in Gonzales County for the
offense of arson. On May 21, 2001, the district court found that appellant had violated several conditions of his community
supervision, including: (1) intentionally and knowingly causing the death of Carmen Eaton by shooting her with a shotgun,
(2) consuming alcohol on or about December 31, 2001, and (3) testing positive for cocaine on or about January 2, 2001. 
The court found him guilty of the offense of arson and assessed his punishment at twenty years imprisonment.

 Department caseworker Deane Novosad investigated the allegation of abuse/neglect and interviewed the children, relatives
and other witnesses. Novosad testified she discovered evidence of drug use in the home, as well as domestic violence. On
the day the children were removed, she asked their relatives for all items belonging to the children, such as clothes, toys,
formula or diapers, but the relatives were unable to give her anything. Captain Harkey attempted to locate these items in
appellant's home, but was unable to locate any formula or diapers. Novosad testified that the twin babies had one bottle,
which they shared, and it contained only a small amount of formula.

 Cheryl Green, a licensed master social worker, provides counseling to the two oldest children, C.L.P. and S.D.P. Green
testified that both children have indicated appellant sexually abused them. The children have said they saw appellant shoot
their mother; this has been traumatic on their emotional well-being. 

 Green and Sandy Hogan, the foster mother of C.L.P. and S.D.P., testified that when they first saw them, the children had
several teeth missing, and the teeth they had were badly decayed. Hogan said that upon arrival, the children did not even
know how to brush their teeth. Both had to undergo extensive oral surgery requiring the removal and capping of teeth. 
Hogan also testified that S.D.P. had severe diaper rash when she was first placed in her home. The rash extended from her
belly button in the front to her lower back. The rash was treated with both oral and topical medication and took two
months to heal. 

 Appellant did not testify and did not present any evidence.

 Viewing the evidence in the light most favorable to the verdict, we conclude the evidence is legally sufficient to support
the trial court's finding that appellant engaged in conduct dangerous to the children's physical or emotional well-being. 
After considering the record as a whole, we conclude the evidence is more than sufficient to show that the trial court, as
fact finder, could reasonably form a firm belief or conviction that appellant engaged in conduct dangerous to the children's
physical or emotional well-being. Thus, the evidence is factually sufficient to support the trial court's finding. Appellant's
second issue is overruled.

 In his fourth issue, appellant contends the evidence is legally and factually insufficient to support the trial court's finding
that the termination is in the best interest of the children.

 After considering the factors set out in Holley, 544 S.W.2d at 372, we conclude the evidence is legally sufficient to support
the trial court's finding that the termination is in the best interest of the children. It is undisputed that the mother of the
children is deceased, and appellant is presently serving a twenty-year prison sentence for arson. No evidence was presented
indicating when appellant will be released.

 Further, the two oldest children witnessed appellant shoot their mother and have indicated appellant sexually abused them. 
Because of the traumatic effect these events have had on them emotionally, these children will require counseling
indefinitely. The children often "act out" aggressively by re-enacting the shooting and the aftermath of the shooting. The
children's counselor has trained the foster parents to work with the children when they become aggressive or highly
distraught. The children presently reside with persons who are able to provide for their specific emotional needs. 

 The present foster families have demonstrated their ability and willingness to provide a stable and nurturing environment
for these children. Each foster family has indicated a strong desire to adopt the children. These families have been
involved with the four minor children for approximately two years and are very dedicated to their well-being, both
physically and emotionally. C.L.P. and S.D.P. have expressed a desire to remain with their foster family. 

 We also conclude that the evidence is factually sufficient to support the trial court's finding that the termination is in the
best interest of the children. The evidence is more than sufficient to show that the trial court could reasonably form a firm
belief or conviction that termination is in the best interest of the children. As we previously noted, appellant did not testify
or present any evidence. Thus, the record contains no evidence that the fact finder could not reasonably have formed a firm
conviction or belief that terminating appellant's rights was in the children's best interest. Appellant's fourth issue is
overruled.

 In light of our disposition of appellant's second and fourth issues, it is not necessary to address appellant's remaining
issues. See Tex. R. App. P. 47.1.

D. Conclusion


 We have carefully reviewed the appellate record, counsel's brief, and appellant'spro se brief. See Stafford, 813 S.W.2d at
511. We find nothing in the record that might arguably support this appeal. See id. Because we have found no reversible
error in this case, we agree with appellant's counsel that the appeal is wholly frivolous and without merit.

 We affirm the trial court's decree of termination.



FEDERICO G. HINOJOSA

Justice



Opinion delivered and filed this the

6th day of March, 2003.

1. On September 14, 1998, Porter pleaded guilty to the offense of arson and was placed on five years deferred adjudication
community supervision. On April 23, 2001, the State filed a motion to adjudicate guilt, alleging that Porter had violated
the conditions of his community supervision. After a hearing on May 21, 2001, the district court found that Porter had
violated the terms of his community supervision by:



 


 intentionally and knowingly causing the death of Carmen Eaton; 


 

 


 consuming alcohol and submitting a urine specimen which tested positive for cocaine;


 

 


 failing to abstain from the use of any substance calculated to cause intoxication;


 


 failing to pay his community supervision fee;


 


 failing to pay his fine;


 


 failing to complete his community supervision restitution; and


 


 failing to pay his attorney fees.





The trial court adjudged Porter guilty of arson, and assessed his punishment at twenty years imprisonment in the
Institutional Division of the Texas Department of Criminal Justice.