

**NUMBER 13-12-00580-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

**IN THE INTEREST OF R. T., J. L., AND E. Y., CHILDREN**

**On appeal from the 135th District Court
of Victoria County, Texas.**

**MEMORANDUM OPINION**

**Before Chief Justice Valdez and Justices Rodriguez and Longoria
Memorandum Opinion by Chief Justice Valdez**

Appellant, I.T., appeals the termination of her parental rights to her three children, R.T., J.L. and E.Y. *See* TEX. R. APP. P. 9.8(b)(2) (providing that in a parental-rights termination case, "the court must, in its opinion, use an alias to refer to a minor, and if necessary to protect the minor's identity, to the minor's parent or other family member"). By three issues, I.T. contends that the evidence is legally and factually insufficient to support the trial court's finding that she violated two statutory grounds for

termination and that the trial court abused its discretion in terminating her parental rights while not terminating E.Y.'s father's parental rights. We affirm.[1]

## I. THE EVIDENCE

Terry Kubena, a case worker with the Department of Family and Protective Services (the "Department"), testified that she was assigned to I.T.'s case. Kubena stated that she reviewed the Department's plan of service with I.T. and that I.T. indicated that she understood the plan. According to Kubena, at a status hearing on December 12, 2011, the trial court ordered I.T. to comply with the service plan, and she indicated that she understood that if she did not comply with the plan it would impact her ability to get her children returned to her. Kubena testified that I.T. has not complied with the service plan by failing to attend counseling and parenting classes and by failing to complete a hair follicle drug test. Kubena explained that I.T. was not allowed by court order to visit her children until she completed the hair follicle test and that due to her failure to complete the test, I.T. had not seen her children from April 2012 until the date of the termination hearing on September 4, 2012. I.T. contacted Kubena in August 2012, informing her that she wanted to "finish her services."

The children were placed with their maternal grandmother in Alford, Texas. According to Kubena, that placement has been "[e]xcellent" and the children were "doing well." The Department requested that I.T.'s parental rights be terminated and that the trial court grant permanent managing conservatorship of the children to the Department. The Department sought to eventually grant permanent placement of the children with the maternal grandmother.

---

[1] E.Y.'s father's paternity rights were not terminated, and E.Y.'s father is not a party to this appeal.

Kubena testified that I.T. had previously submitted to a drug test, and it was negative. Kubena did not elaborate regarding when this test was conducted, but she reiterated that in April 2012, I.T. was ordered to take a hair follicle drug test, and she had not complied. Kubana stated that it was in the children's best interest that I.T.'s parental rights be terminated.

Upon cross-examination, the children's attorney ad litem asked Kubena the following question: "Why is [I.T.]—why were the kids removed from [I.T.]?" Kubena responded, "Allegations of drug abuse, that she was smoking something out of a can. People were coming in and out of the home. That it was unsure if drugs were in the presence of the children." Kubena explained that the Department was concerned that I.T. was continuing to use drugs. The attorney ad litem asked Kubena if there had been domestic violence issues raised in the case between E.Y.'s father and I.T., and Kubena replied, "Yes." Kubena explained that I.T. had been released from jail after being arrested for domestic violence due to an argument between I.T. and E.Y.'s father. Kubena said that I.T. claimed that E.Y.'s father "put his hands on her but she's the one who went to jail."

Martha Villarreal, the "CASA volunteer," in the case testified that she has not had any contact with I.T. or any of the children's fathers. Villarreal visited the children in October.[2] Villarreal stated that she had been instructed to observe I.T.'s visitation with the children, but that she "may [have been] wasting [her] time because [I.T.] didn't show up regularly." Villarreal did not testify regarding whether I.T. actually attended visitation with her children and whether Villarreal ever observed those visitations. Villarreal was

---

[2] Villarreal did not state the year of the first visit.

3

unaware if her role as a volunteer for CASA included visiting with the parents. Villarreal testified that she followed her supervisor's direction to "learn about the children and be there for the children." According to Villarreal, the children were doing well in their new placement and were requesting to stay there.

Villarreal recommended that the children stay with their maternal grandmother. Villarreal stated, "I'm basing my decision on the lack of communication that I have— have not been able to see as far as between parent and child or effort on that part and the communication I have had with the children themselves and what they have been telling me."

E.Y.'s father testified that there had been a prior investigation with the Department regarding the children. E.Y's father stated that in 2009 "[a]llegations [of domestic violence] were made"; however, he was not arrested or charged.[3] E.Y.'s father was asked if the Department conducted an investigation due to allegations that he was intoxicated and had been selling crack and pills from the home. E.Y. replied that "[p]eople say stuff about [him] all the time because of [his] history" and that he has paid his debt to society. When asked if this allegation was in the Department's history of the case, E.Y.'s father responded, "Like I said, if you've got it there, I mean, I don't know what people say about me. People say stuff about me all the time. If you have got it there—"

Concerning whether domestic violence has occurred during the Department's case, E.Y.'s father stated that he and I.T. "had an argument and the neighbors called

---

[3] I.T. testified the she resides with E.Y.'s father in an apartment.

the police and the police took [I.T.] to jail." E.Y.'s father denied that any physical hitting occurred during this incident and claimed that the couple had been "just arguing."

I.T. testified that she remembered that the service plan had been explained to her. I.T. stated that she completed her psychological examination in San Antonio, Texas as required by the plan. I.T. then attended three or four counseling sessions. I.T. stated that she stopped attending counseling after the argument with E.Y.'s father because she moved to Alice, Texas with her mother. I.T. contacted Kubena in August 2012 because she wanted to start parenting classes but did not know where to go for those classes. Counsel asked I.T. why she had not submitted to the hair follicle test. I.T. responded, "Because I felt like [Kubena] was just on to us and wasn't trying to—I mean, I thought CPS was all about reuniting your kids with the parents and I felt like she wasn't doing that. I felt like she was on my mom's side. So, I mean, I just wanted to bring it up with y'all and let y'all know. I mean, if that's what y'all had agreed to I would have gone."[4]

I.T. admitted that in September 2011 she had a positive drug test. However, according to I.T., she had not had a positive test since that time.[5] I.T. acknowledged that she had missed "maybe" one or two scheduled visitations with her children. I.T. testified that on three of four occasions, the children were not taken to the scheduled visitations without any notice to her. I.T. explained, "[Personnel from the Department] just said that the person that was supposed to bring [the children] was sick. They were

---

[4] I.T. appears to be referring to whether or not her attorney had agreed with the requirement of the hair follicle test.

[5] The children were removed from I.T.'s home on September 20, 2011.

5

to let us know at the last minute we'd show up with food and everything and we would just have to leave."

On cross-examination by the Department's attorney, I.T. testified that J.L. tested positive for cocaine when he was born and that she ingested cocaine during the "last trimesters" of her pregnancy with J.L.[6]  When asked if the reason she did not get the hair follicle test was because she was "dirty," I.T. said, "No."  I.T. stated that she was willing to take the test after the termination hearing was completed.  I.T. admitted that although visitation with her children had been suspended pending the outcome of the drug test, she had still not completed that test.[7]

At the beginning of the termination hearing, the Department requested that the trial court take judicial notice of the court's file.  The trial court took judicial notice of its file, without objection.

The court's file contained documents related to removal of the children.  The court's file contains an affidavit setting out that the children were removed due to allegations of abuse and neglect.[8]  Specifically, there were allegations that I.T. had been "smoking some type of drug out of a can as well as snorting cocaine and taking prescription Loritab and Xanex."  The affiant stated that it was "believed that the children were present during [I.T.'s] drug usage and it is unknown if the children have access to the drugs in the home."  According to the affiant, it was believed that drugs were being sold and purchased at the residence where the children resided and that while I.T. was

---

[6] J.L. was born on October 3, 2007.

[7] On cross-examination by the attorney ad litem, I.T. clarified that the test had been rescheduled to be done in August, but she failed to show up for that test.

[8] The affidavit was written by Marissa Hammack, the Department's employee.

"under the influence of illegal substances no one is available to watch the children" and "the children [had] to tend to themselves." The affiant stated that E.Y. and J.L. had lost a "considerable amount of weight" and that she had observed the children to be "pale and sunken when they used to be chunky." The affiant related that J.L had broken his arm and that it was believed that I.T. had waited several days before taking him to the doctor. The affiant stated that I.T. had called the children derogatory names and left the children "with whom ever is around." I.T. consented to a drug test, and she tested positive for cocaine, amphetamines, and opiates. I.T. denied ingesting cocaine but admitted that she had "touched it two days prior but her children were with the next door neighbor. . . ."

On September 20, 2011, the trial court signed an order for protection of a child in an emergency and notice of a hearing. In its order, the trial court found that there was "an immediate danger to the physical health or safety of the children or that the children have been the victims of neglect or sexual abuse and that continuation in the home would be contrary to the children's welfare." The record shows that an adversary hearing was held on October 14, 2011. I.T. appeared with her attorney. The trial court found, among other things, that after examining and reviewing the evidence "including the sworn affidavit accompanying the petition and based upon the facts contained therein," that "there is sufficient evidence to satisfy a person of ordinary prudence and caution that: (1) there was a danger to the physical health or safety of the children which was caused by an act or failure to act of the person entitled to possession and the children to remain in the home is contrary to the welfare of the children."

A family service plan was also included in the trial court's file. It states that the Department "became involved due to allegations of neglectful supervision, physical abuse, physical neglect and medical neglect" of the children. In the service plan, the Department alleged that I.T. was incapable of properly caring for her children while she is under the influence of drugs and that she has not demonstrated that she is able to be drug free. The Department was also concerned "about a pattern of maltreatment towards" the children and about the home if I.T. is selling drugs.

## II. APPLICABLE LAW AND STANDARD OF REVIEW

Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see In re D.S.P.*, 210 S.W.3d 776, 778 (Tex. App.—Corpus Christi 2006, no pet.). Therefore, termination of the parent-child relationship must be supported by clear and convincing evidence. *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005); *In re D.S.P.*, 210 S.W.3d at 778. This intermediate standard falls between the preponderance of the evidence standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *In re C.S.*, 208 S.W.3d 77, 83 (Tex. App.—Fort Worth 2006 pet. denied); *Porter v. Tex. Dep't of Protective & Regulatory Servs.*, 105 S.W.3d 52, 57 (Tex. App.— Corpus Christi 2003, no pet.).

Before terminating the parent-child relationship, the trial court must find that the parent committed one of the acts prohibited by section 161.001(1)(A-T) of the Texas

8

Family Code and that termination is in the child's best interest.[9] TEX. FAM. CODE ANN. § 161.001(1)(A-T) (West Supp. 2011); *id.* § 153.002 (West 2008); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). In this case, it was alleged that I.T. violated section 161.001 by (1) "knowingly place[ing] or knowingly allow[ing] the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children," TEX. FAM. CODE ANN. § 161.001(1)(D), and by failing to "comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the [Department] for not less than nine months as a result of the children's removal from the parents under Chapter 262 for the abuse or neglect of the children," *id.* § 161.001(1)(O).

In reviewing the legal sufficiency of the evidence supporting parental termination, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.L.*, 163 S.W.3d at 85 (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)); *In re D.S.P.*, 210 S.W.3d 776, 778 (Tex. App.—Corpus Christi 2006, no pet.). We must assume that the trier of fact resolved disputed facts in favor of its finding if it was reasonable to do so. *In re J.L.*, 163 S.W.3d at 85 (quoting *In re J.F.C.*, 96 S.W.3d at 266). We must also disregard all evidence that a reasonable fact-finder could have disbelieved or found to be incredible. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *In re D.S.P.*, 210 S.W.3d at 778. "If [an appellate court] determines that no reasonable fact-finder could form a firm belief or conviction that the matter that

---

[9] I.T. does not challenge the trial court's finding that termination of her parental rights is in the children's best interest.

must be proven is true, then that court must conclude that the evidence is legally insufficient." *In re J.F.C.*, 96 S.W.3d at 266.

In a factual sufficiency review, "[w]e must determine whether, on the entire record, a fact-finder could reasonably form a firm conviction or belief that the parent violated a provision of section 161.001(1) and that the termination of the parent's parental rights would be in the best interest of the child." *In re M.C.T.*, 250 S.W.3d 161, 168 (Tex. App.—Fort Worth 2008, no pet.) (citing *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002)). Under this standard, we consider whether the

> disputed evidence is such that a reasonable fact finder could not have resolved the disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.

*In re J.F.C.*, 96 S.W.3d at 266.

## A.  Violation of Section 161.001(1)(O)

By her second issue, I.T. contends that the evidence was legally and factually insufficient to support the jury's finding that she violated section 161.001(1)(O).[10] *See* TEX. FAM. CODE ANN. § 161.001(1)(O). It is undisputed that I.T. failed to comply with a court ordered service plan, which set out the actions necessary for her to avoid the restriction or termination of her parental rights and that the children had been in the

---

[10] By her first issue, I.T. contends that the evidence is legally and factually insufficient to support the trial court's finding that she violated section 161.001(1)(E). However, because we conclude that the evidence is sufficient to support the trial court's finding that I.T. violated section 161.001(1)(O), we need not address I.T.'s first issue because it is not dispositive of the appeal. *See* TEX. R. APP. P. 47.1; TEX. FAM. CODE ANN. § 161.001(1) (West Supp. 2012) (establishing that in a proceeding to terminate the parent-child relationship brought under section 161.001 of the family code, the Department is required to establish one predicate act listed under subdivision (1) of the statute); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005) (explaining that in order to have his or her parental rights terminated, "the parent must have committed one of the acts prohibited under section 161.001(1) of the Texas Family Code").

10

permanent or temporary managing conservatorship of the Department for not less than nine months. *See id.* The only issue for our review is I.T.'s contention that the Department presented insufficient evidence to support a finding that the children had been removed due to abuse or neglect.[11] *See id.*

At the termination hearing, Kubana testified that the children were removed due to "[a]llegations of drug abuse, that [I.T.] was smoking something out of a can. People were coming in and out of the home. That it was unsure if drugs were in the presence of the children."

The trial court also took judicial notice of its file.[12] In its order for protection of a child in an emergency and notice of hearing, the trial court listed in its findings that "there [was] an immediate danger to the physical health or safety of the children or the children have been the victims of neglect or sexual abuse and that continuation in the home would be contrary to the children's welfare." The trial court then ordered that the Department be named the temporary sole managing conservator of the children.

In a temporary order following adversary hearing, the trial court found that "there was a danger to the physical health or safety of the children which was caused by an

---

[11] We will assume, without deciding, that the Department was required to prove by clear and convincing evidence that the children were removed due to abuse or neglect. *See In re E.S.C.*, 287 S.W.3d 471, 475 (Tex. App.—Dallas 2009, pet. denied) (assuming without deciding that removal of children due to abuse or neglect is an element); *see also L.Z. v. Tex. Dept. of Family and Protective Servs.*, No. 03-12-00113-CV, 2012 Tex. App. LEXIS 7142 at *21–22 (Tex. App.—Austin Aug. 23, 2012, no pet.) (following *In re E.S.C.* in assuming without deciding this issue, but identifying a number of sister courts that have concluded that abuse or neglect is a required element of section 161.001(1)(O)).

[12] I.T. did not object to the trial court's taking judicial notice of its file, and on appeal, I.T. does not challenge the trial court's taking judicial notice of its file. *See In re I.V.*, 61 S.W.3d 789, 795 (Tex. App.—Corpus Christi 2001, no pet.) (concluding that the appellant waived its argument that the trial court could not take judicial notice of its file because the appellant failed to object at trial), *disapproved on other grounds by In re J.F.C.*, 96 S.W.3d 256, 267 n.39 (Tex. 2002); *see also In re E.S.*, No. 04-97-00835-CV, 1998 Tex. App. LEXIS 6120, at *3 (Tex. App.—San Antonio Sept. 30, 1998, no pet.) (explaining that the appellant waived his argument on appeal regarding the trial court taking judicial notice of its file because the appellant's argument on appeal did not comport with his objection at trial).

act or failure to act of the person entitled to possession and for the children to remain in the home is contrary to the welfare of the children." The trial court documented that it had taken into consideration the affidavit attached to the Department's petition. This affidavit established that the children had been removed by the Department because it was concerned about I.T.'s drug use and that the children were being abused or neglected.

In the service plan that the trial court ordered I.T. to follow, the Department documented that it had become involved in this case "due to allegations of neglectful supervision, physical abuse, physical neglect[,] and medical neglect" attributed to I.T. The Department stated in the service plan that I.T. had been "abusing drugs and selling drugs out of the home while the children were living there." Also, in its permanency plan and progress report to the trial court, Kubena stated that there was a "[r]eason to believe" that "neglectful supervision" of the children by I.T. occurred.

Viewing the evidence in the light most favorable to an affirmative finding under section 161.001(1)(O), we conclude that the trial court could have formed a firm belief or conviction that the children were removed from I.T. due to neglect or abuse. *See In re J.L.*, 163 S.W.3d at 85; *see also In re A.C.*, No. 12-04-00264-CV, 2005 Tex. App. LEXIS 8137, at *12 (Tex. App.—Tyler Sept. 30, 2005, no pet.) (mem. op.) (concluding that evidence was sufficient that child was removed due to neglect where the Department stated "that there was 'reason to believe' a report alleging neglectful supervision and physical neglect of both children by the parents" and the Department's specialist testified at trial that she "believed the children were endangered or at risk because of alleged drug use and the lack of appropriate housing"). Therefore, there is clear and

12

convincing evidence that removal of the children was due to neglect or abuse, and the evidence is legally sufficient to support the trial court's finding. *See In re J.L.*, 163 S.W.3d at 84; *In re D.S.P.*, 210 S.W.3d at 778. Moreover, the evidence regarding why the children were removed was not disputed at trial. Therefore, we conclude that the evidence is factually sufficient to support the trial court's finding that the children were removed due to abuse or neglect. *In re M.C.T.*, 250 S.W.3d at 168. We overrule I.T.'s second issue.

## B. E.Y.'s Father's Paternity Rights

By her third issue, I.T. complains that the trial court did not have a "basis for the completely different resolutions of [E.Y.'s father] and I.T.'s case" and I.T. "urges that [we] remand this matter back to the Trial Court on this basis allow [I.T.] the opportunity to finish her service plan, the same as the Trial Court allowed" E.Y.'s father.

I.T. does not provide any authority supporting a conclusion that this Court may reverse the trial court's order of termination on the basis that the other parent's parental rights have not been terminated by the trial court, and we find none. Accordingly, we overrule I.T.'s third issue.

### III. CONCLUSION

We affirm the trial court's judgment.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
7th day of February, 2013.

13