

# NUMBER 13-25-00448-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF S.A., A.A., A.L.A., CHILDREN

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 5 OF NUECES COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Peña and West**
**Memorandum Opinion by Chief Justice Tijerina**

Appellant M.R. (Mother) and B.J.A. (Father) appeal the trial court's termination of their parental rights to the minor children, Laura, Adam, and Alice.[1] By three issues, Mother and Father challenge the statutory termination grounds. We affirm.

## I. BACKGROUND

At a trial held on July 24, 2025, Desiree Medellin, a Texas Department of Family

---

[1] We refer to the parties and the children by aliases in accordance with the rules of appellate procedure. *See* TEX. R. APP. P. 9.8(b)(2).

and Protective Services (the Department) caseworker, testified that the children had been removed from the home due to concerns about physical abuse and neglectful supervision. Alice, who was eight months old at the time of removal, had an ear infection with green pus coming out of her ear, had a bruise on her cheek reportedly caused when Father slapped her, had a fractured tibia, and had tested positive for cocaine. Adam, who was two at the time of removal, had been found unaccompanied at the park with a soiled diaper and subsequently tested positive for amphetamine. It had been reported that Laura, who was approximately three years old at the time of removal, ate old macaroni that was on the floor that caused her to vomit. Medellin testified that drug paraphernalia was "visible at the time of removal" and clarified there was "a marijuana roach that was found on the floor." A.S., Mother's sister, was caring for the children when the removal occurred.

The trial court appointed the Department as the children's temporary managing conservator. A family plan evaluation for Mother states that the trial court ordered that Father have no contact with the children due to his arrest for sexual assault of a child. A family plan evaluation for Father states that Father admitted he previously used marijuana, including synthetic, used marijuana during the pendency of the case, committed domestic violence in the past, absconded during the proceedings, and failed to get drug treatment as required by the family plan of service.

Medellin believed that the children suffered trauma due to the conditions that the children "were removed from . . . [that] endanger[ed] [their] physical or emotional well-being." Medellin explained that the children were "on medication right now, but they still have adjustment disorders" and "have . . . a lot of built-up aggression" and social anxiety

2

due to those conditions. According to Medellin, Mother did not "acknowledge" an awareness "that the children were in such poor conditions" or "take any accountability for the condition in which" they were found.

Medellin testified that although Mother completed a family plan of service, Mother had not made the appropriate behavioral changes. Medellin stated that a relative reported that Father "would hit the children and that he's the one that hit [Alice] in the face," but Mother denied that Father had "ever hit the children. She never hit the children. So, there was no accountability for those reports." Medellin said that Mother "needed to have her own home, transportation, [and] a steady income," which she did not do in the two years the case had been pending. Medellin stated that the Department's "main concern [about reunification] is that [Mother had] just not shown us she's able to be stable on her own." Medellin explained the expectations at monthly meetings with Mother. However, Mother was unable or unwilling to get a home for the children and "lost" an opportunity to get an appropriate home with assistance from "Hope House." Deb Hullet, a "CASA" employee, explained that she assisted Mother in getting the keys to that home; however, when it was time to move in, Mother "declined [her help,] said her sister would take" her, and "acted like she was going to show up. She did not show up that night." Hullet said the next day a Hope House representative asked Mother to return the keys, and Hullet "begged them to give her a second chance . . . [:] they said, 'no . . . she did not follow though.'"

Medellin testified Mother failed to visit the children regularly. According to Medellin, Mother would either provide no excuse or various excuses for not visiting the children such as "she was having a bad day," she went out of town, or she did not have transportation. Medellin "reminded" Mother that the Department would provide a ride to

3

Mother and "CASA's given her a ride before." Mother had been allowed a six-hour Christmas visitation with the children that she did not "exercise." Medellin said, "[Mother] just wasn't showing up and the kids were at the Department waiting and then they would freak out if she didn't show up . . . ." Thus, the Department arranged for Mother to arrive at the visitation prior to the children so that the children would not be "trigger[ed]" if Mother failed to attend. Hullet stated that Mother only "really engage[d] with [the children] one time in the last two years, where she was actually playing with them and talking to them." Hullet said, "She doesn't talk to them. She doesn't ask them about school. She doesn't even ask them about what they're doing right then when she's playing with them." Hullet believed that Mother was not motivated because she had not acquired transportation, found housing, or found a job. Medellin stated that Mother had not "provided any support for the children," had not been able to tell Medellin the correct birthdates of the children, and did not "have the means to care for" them. Mother had some jobs but according to Medellin she had not "had a full[-]time job," and at the time of the trial, she did not have a stable income.

According to Medellin, Mother lived with her mother; however, Mother would not allow Medellin in the home, which had been "provided through the Housing Authority," and only had one bedroom. Medellin relayed that it is "against housing rules" for Mother and the children to live at that home, and there is a concern that if the Department allowed the children to reside there, "they would be on the street" if someone reported them. When Medellin visited the home, although not allowed to enter, she peaked in an open door and saw "multiple people there and [Mother] mentioned that" her sisters and brother were also sleeping there; but Medellin had not "been able to run background" checks on those

4

people. Mother informed Medellin that she did not "want to leave" her mother's house.

Medellin testified that Father had not participated in his family plan of service prior to and after being incarcerated. Father refused to submit to drug testing. Medellin acknowledged on cross-examination that Father had been incarcerated when ordered to complete the family plan. However, according to Medellin, Father could have worked on his family plan while incarcerated but told Medellin that "he only had an hour [of free time,] and he wasn't going to work the service." Additionally, Medellin, as per Department policy, "tried to meet with [Father] monthly and he refused to see [her] from February."

The trial court signed the termination order on December 4, 2024, terminating Mother's parental rights pursuant to subsections (D), (E), and (N) of § 161.001 of the Texas Family Code, and terminating Father's parental rights to the children pursuant to subsections (D), (E), and (O). This appeal followed.

## II.     STANDARD OF REVIEW

Parental termination involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Therefore, termination of the parent-child relationship must be supported by clear and convincing evidence that the parent committed one of the acts or omissions prohibited by § 161.001(b)(1) of the Texas Family Code, TEX. FAM. CODE § 161.001(b)(1), and that termination is in the children's best interest. *Id.* § 161.001(b)(2). The "clear and convincing" intermediate standard falls between the preponderance of the evidence standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *Porter v. Tex. Dep't of Protective & Regul. Servs.*, 105 S.W.3d 52, 57 (Tex.

5

App.—Corpus Christi–Edinburg 2003, no pet.). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007.

In reviewing the legal sufficiency of the evidence supporting parental termination, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). We must assume that the trier of fact resolved disputed facts in favor of its finding if it was reasonable to do so. *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266). "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d at 266.

### III. APPLICABLE LAW[2]

Subsection 161.001(b)(1)(D) of the Texas Family Code allows termination when the evidence proves by clear and convincing evidence that the parent knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the child's physical or emotional well-being. TEX. FAM. CODE ANN. § 161.001(b)(1)(D).

---

[2] Only one statutory ground finding is necessary to support a judgment of termination, but in *In re N.G.*, "the Texas Supreme Court held that due process demands that we review the evidence supporting findings under [g]rounds D and E when they are challenged on appeal because termination of parental rights under these [g]rounds 'may have implications for . . . parental rights to other children.'" *In re L.W.*, 609 S.W.3d 189, 195–96 (Tex. App.—Texarkana 2020, no pet.) (quoting *In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019) (per curiam)). Therefore, we will address both grounds in our analysis as applicable. *See id.*

Pursuant to § 161.001(b)(1)(E), termination is proper if the parent has engaged in conduct or knowingly placed the child with persons who engage in conduct which endangers the child's physical or emotional well-being. *Id.* § 161.001(b)(1)(E). Endanger means exposing the child to loss or injury or to jeopardize a child's emotional or physical health. *In re G.C.S.*, 657 S.W.3d 114, 128 (Tex. App.—El Paso 2022, pet. denied).

"Subsection (D) . . . focuses on the child's environment." *In re J.W.*, 645 S.W.3d 726, 749 (Tex. 2022). "[I]nappropriate, debauching, unlawful, or unnatural conduct of persons who live in the home of a child, or with whom a child is compelled to associate on a regular basis" are "inherently part of the 'conditions and surroundings'" of the child, and subsection (D) is "manifestly designed to protect children against just such an environment." *In re B.R.*, 822 S.W.2d 103, 106 (Tex. App.—Tyler 1991, writ denied). Subsection (E) focuses on a parent's conscious course of conduct including not only acts but also omissions or failures to act that endanger the child. *In re E.G.*, 643 S.W.3d 236, 252 (Tex. App.—Amarillo 2022, no pet.). The specific danger to the child's well-being may be inferred from a parent's conduct and need not be established as an "independent proposition." *Id.* A consolidated review of evidence pertaining to subsections (D) and (E) is permitted as they are interrelated. *In re J.W.*, 645 S.W.3d at 749.

#### IV.    STATUTORY GROUNDS

By their first and second issues, Mother and Father contend the evidence is legally and factually insufficient to support termination pursuant to subsections (D) and (E).

Illegal drug use by a parent supports a conclusion that the children's surroundings endanger their physical or emotional well-being. *In re J.S.*, 675 S.W.3d 120, 128 (Tex. App.—Dallas 2023, no pet.). "The factfinder may infer from past conduct endangering the

7

child's well-being that similar conduct will recur if the child is returned to the parent." *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.). "Drug use and its effects on the parent's life and ability to parent may also establish an endangering course of conduct." *See In re J.S.*, 687 S.W.3d 541, 550 (Tex. App.—Eastland 2024, no pet.). "[A]ny drug activity significantly harms the parenting relationship and can constitute endangerment even if it occurs outside the child's presence." *Id.* at 551 (citation modified).

Here, Mother and Father lived in the home when one child tested positive for cocaine and another child tested positive for amphetamine, which are both dangerous illegal substances; and there was a marijuana "roach" on the floor in the home while a child ate macaroni from the floor. *See id.* at 550 (explaining that drug abuse in the home demonstrates endangerment); *In re J.S.*, 675 S.W.3d at 129 (concluding evidence was "both legally and factually sufficient to produce . . . a firm belief or conviction [that] the allegation that Mother knowingly placed or knowingly allowed J.S. to remain in conditions or surroundings which endangered his physical or emotional well-being" because of her continued drug use and because J.S. tested positive for drugs). Evidence was presented that Father previously admitted to using marijuana including synthetic marijuana, claimed he stopped using it, but later admitted that he had relapsed during the pendency of the case. Father tested positive for marijuana during the pendency of this case. Evidence shows that Mother did not "acknowledge" an awareness "that the children were in such poor conditions" or "take any accountability for the condition in which" they were found, which included testing positive for drugs. Father refused drug testing, did not inform the Department where he was when he was on probation, and failed to comply with a service plan requiring, among other things, that he address his drug issues. *In re C.A.B.*, 289

8

S.W.3d 874, 885 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("A factfinder reasonably could infer that [the parent's] failure to submit to the court-ordered drug screening indicated she was avoiding testing because she was using drugs."); *see also In re L.E.S.*, 471 S.W.3d 915, 924 (Tex. App.—Texarkana 2015, no pet.) ("Drug use and its effect on a parent's life and h[er] ability to parent may establish an endangering course of conduct." (citation modified)). The trial court could have disbelieved Father's statement to the Department that he had stopped using marijuana while in the home and inferred that the parents engaged in drug use or allowed others to do so in the home.[3]

Next, "[c]onduct that subjects a child to a life of uncertainty and instability also endangers the child's physical and emotional well-being." *In re M.R.J.M.*, 280 S.W.3d at 503. Here, the evidence shows that Mother did not visit the children when given the opportunity even during Christmas, and when she did visit, she was unable to parent the children appropriately as she did not interact with them and was either unwilling or unable to control their behavior. *See In re J.S.*, 675 S.W.3d at 130 ("The jury could find Mother's sporadic visits followed by her failure to visit J.S. for months endangered him." (citing *In re C.Y.*, No. 02-21-00261-CV, 2022 WL 500028, at *6 (Tex. App.—Fort Worth Feb. 18, 2022, pet. denied) (mem. op.))). The evidence shows that due to Mother's sporadic visitation, the Department had to ensure that Mother arrived before bringing the children to visitation because the children would be "triggered" by Mother's failure to visit them as anticipated. *See id.*; *see also In re J.A.V.*, 632 S.W.3d 121, 132 (Tex. App.—El Paso 2021, no pet.) (providing the parent's inconsistent visitation is part of an endangerment

---

[3] Neither Father nor Mother testified.

9

analysis).

Additionally, Mother did not get a job as required and refused to get appropriate housing stating that she preferred to live at her mother's home where she was not allowed to live with the children. Mother refused to allow the Department to inspect her mother's home or investigate the inhabitants. And when provided with keys to an appropriate home, Mother did not appear when required and lost the privilege of living in the home. Father failed to complete his family plan and absconded while on probation. The Department was unable to determine whether Mother or Father had a permanent residence, and neither Mother nor Father offered any evidence showing stable housing. *See In re J.A.V.*, 632 S.W.3d at 132 (stating in conducting its endangerment analysis, the trial court may consider a parent's lack of effort in providing a stable home).

Father was arrested for committing a criminal sexual offense against a child, so he was unable to visit the children. *See In re J.F.-G.*, 627 S.W.3d 304, 313 (Tex. 2021) ("A parent's criminal history—taking into account the nature of the crimes, the duration of incarceration, and whether a pattern of escalating, repeated convictions exists—can support a finding of endangerment. Imprisonment thus 'is certainly a factor' the trial court may weigh when considering endangerment."). Although evidence showed that while incarcerated, Father could have worked on his service plan, he refused to do so; and he did not participate when he was on probation. *See In re S.R.*, 452 S.W.3d 351, 365 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("This evidence of the parents' failure to comply with services to improve their mental health is a factor that the trial court could have considered in finding that the parents engaged in a course of conduct that endangered the physical and emotional well-being of the Children."); *see also In re*

10

*A.J.A.D.*, No. 01-22-00521-CV, 2022 WL 17813763, at *8 (Tex. App.—Houston [1st Dist.] Dec. 20, 2022, pet. denied) (mem. op.) ("[A] parent's voluntary failure to engage in or complete services can constitute evidence of child endangerment, particularly to the extent the parent's failure to do so indicates that past endangering conduct remains unaddressed and is likely to persist in the future.").

"Direct physical abuse is clearly conduct that endangers a child." *In re R.R.*, 711 S.W.3d 126, 140 (Tex. App.—Houston [1st Dist.] 2024, no pet.) (internal quotations omitted) (quoting *In re G.P.*, 01-16-00346-CV, 2016 WL 6216192, at *11 (Tex. App.—Houston [1st Dist.] Oct. 25, 2016, no pet.) (mem. op.)). "[A]busive or violent conduct by a parent . . . can produce an environment that endangers the physical or emotional well-being of a child." *In re L.E.S.*, 471 S.W.3d at 925 (citation modified) (quoting *In re B.E.T.*, No. 06–14–00069–CV, 2015 WL 495303, at *5 (Tex. App.—Texarkana Feb. 5, 2015, no pet.) (mem. op.)). "Similarly, a parent's failure to remove . . . his children from a violent [home] endangers the physical or emotional well-being of the children." *Id.* (citation modified).

Here, there is evidence that Mother continued to stay in contact with Father even after he hit the children causing injury and was arrested for sexual abuse of one of the older children.[4] *See In re R.R.*, 711 S.W.3d at 139; *In re D.J.W.*, 624 S.W.3d 60, 67 (Tex. App.—El Paso 2021, no pet.) (recognizing that domestic violence supports either environmental or course-of-conduct endangerment); *In re M.L.L.*, 573 S.W.3d 353, 364

---

[4] Evidence was presented that Mother relinquished her parental rights to five older children, who are not parties to this proceeding. There is evidence in the record that the child sexual abuse arrest concerned one of Mother's other older children.

(Tex. App.—El Paso 2019, no pet.) (considering domestic violence, lack of self-control, and propensity for violence as evidence of course-of-conduct endangerment predicate); *In re O.E.R.*, 573 S.W.3d 896, 906 (Tex. App.—El Paso 2019, no pet.) (finding that the environmental endangerment predicate was fulfilled due to the parent's continuance of a romantic relationship that exposed child to domestic violence resulting in traumatic emotional harm to the child); *In re C.A.B.*, 289 S.W.3d at 886 ("If a parent abuses the . . . children, that conduct can support a finding of endangerment even against a child who was not yet born at the time of the conduct."). The Department did not present any evidence concerning what crime Father was convicted of committing.[5] And although the facts of Father's offense are not in the record, allegations of a sexual offense against a child are serious and an allegation of such a violent act is enough to support the trial court finding that Father engaged in a course of conduct that presents a danger to the children's physical and emotional well-being. *In re D.J.W.*, 624 S.W.3d at 67 ("As we have previously recognized, domestic violence may support a finding of either environmental or course-of-conduct endangerment, depending on the given circumstances."). The evaluation plan for Father states, "Although, [Father] has previously denied any domestic violence, he has had several charges for domestic violence with a previous ex-girlfriend." The document further indicated that Father "has previously displayed aggressive behaviors and has been arrested for assault on a family member causing physical injury." *See In re R.R.*, 711 S.W.3d at 139 ("Inappropriate, abusive, or unlawful conduct by a parent . . . can create an environment that endangers the physical and emotional well-being of children

---

[5] We note that many details of the case are not included in the record, and we encourage the Department to present as much evidence as possible for appellate review.

12

as required for termination under subsection (D).”). Moreover, evidence of Father's incarceration due to a serious criminal offense “together with the duration and consequences of the incarceration, is relevant when the resulting abandonment presents a risk, as it did here, to a child's physical or emotional well-being.” *See In re J.F.-G.*, 627 S.W.3d at 315 (“Lengthy incarceration presents . . . such a significant risk [to a child's well-being] that the Legislature provides for the *pre-emptive* termination of parental rights, even before the risk associated with incarceration manifests itself.”).

Therefore, the trial court may have reasonably inferred that Father's lengthy incarceration, violent past, and serious criminal conduct have endangered the children's physical and emotional well-being under subsection (E), and that Mother's previous continued contact with Father endangered her children as evidenced by the children testing positive for illegal substances. *See id.*; *In re R.R.*, 711 S.W.3d at 140 (“A parent's criminal conduct that exposes her to the possibility of incarceration can negatively impact a child's living environment and emotional well-being.”); *In re C.A.B.*, 289 S.W.3d at 885 (concluding that a parent's continuous criminal “behavior evinces a course of conduct that a factfinder reasonably could conclude endangers [the children's] well-being”); *Avery v. State*, 963 S.W.2d 550, 553 (Tex. App.—Houston [1st Dist.] 1997, no writ) (establishing that past criminal behavior qualified as a voluntary, deliberate, and conscious course of conduct endangering the child's emotional well-being). Moreover, the trial court could have reasonably determined from the evidence that both parents allowed the children to remain in an endangering environment. *See In re D.J.W.*, 624 S.W.3d at 67 (“Conduct of a parent or another person in the home can create an environment that endangers the physical and emotional well-being of a child . . . under Subsection D,” and

13

"[i]nappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis in his home is a part of the 'conditions or surroundings' of the child's home under subsection (D)."); *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied) ("An environment . . . routinely subject[ing] a child to the probability [of being] left alone . . . [because a parent committed] a new offense [due to] continued use of illegal drugs . . . endangers both the physical and emotional well-being of a child."); *see also In re E.M.*, 494 S.W.3d 209, 221–22 (Tex. App.—Waco 2015, pet. denied) ("Section D permits termination based upon only a single act or omission.").

Based on the foregoing and giving due deference to the trial court's findings and the appropriate standards of review, we conclude that the trial court could have formed a firm belief or conviction that Mother and Father knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being and engaged in a conscious course of conduct including not only acts but also omissions or failures to act that endangered the children. *See* TEX. FAM. CODE § 161.001(b)(1)(D), (E); *see also In re E.M.*, No. 09-21-00317-CV, 2022 WL 1037756, at *8 (Tex. App.—Beaumont Apr. 7, 2022, no pet.) (mem. op.) (setting out that the father's "ongoing drug use following the children's removal, his arrests, his decision to leave the children with an inappropriate caregiver, and his violent outbursts supported the trial court's" termination pursuant to § 161.001(1)(D) and (E)). The evidence was legally and factually sufficient to support these statutory grounds for termination. *See In re J.S.*, 675 S.W.3d at 128; *In re S.D.*, 980 S.W.2d at 763. We overrule Mother's and Father's first and second issues.[6]

---

[6] We need not address Mother's third and fourth issues challenging the trial court's basis for

14

## V.    CONCLUSION

We affirm the trial court's judgment as to both parents.

JAIME TIJERINA
Chief Justice

Delivered and filed on the
5th day of February, 2026.

---

termination pursuant to subsection (N) and Father's third issue challenging termination on the basis of subsection (O) because only one basis is necessary to affirm the trial court's judgment.