

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-21-00160-CV

### IN THE INTEREST OF M.L., A CHILD

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. 2020-539,477, Honorable Kara L. Darnell, Associate Judge Presiding

December 8, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant, Father, appeals the trial court's order terminating his parental rights to his son, M.L..[1] Appointed counsel for Father has filed an *Anders*[2] brief in support of a motion to withdraw. Finding no reversible grounds for appeal, we reform the judgment of the trial court and affirm as reformed.

---

[1] To protect the privacy of the parties involved, we will refer to the appellant as "Father," to the child's mother as "Mother," and to the child by initials. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b). Mother's parental rights were also terminated in this proceeding. Mother does not appeal.

[2] *See Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

## Background

In April of 2020, the Texas Department of Family and Protective Services became involved with Mother and her newborn baby, M.L., due to concerns of Mother's drug use. M.L. was born two and a half months premature and was admitted to the neonatal intensive care unit at the hospital. During the Department's investigation, Mother admitted that she used methamphetamine off and on since she was eighteen years old, including during her pregnancy. Both Mother and M.L. tested positive for methamphetamine when M.L. was born. At the time of M.L.'s birth, Father was incarcerated for violating parole for a federal drug possession charge. The Department filed its petition for protection, conservatorship, and termination of parental rights of Mother and Father. Following an adversary hearing, the Department was appointed temporary managing conservator of M.L. and he was placed with his maternal aunt.

Father maintained monthly contact with the Department while he was incarcerated. After Father was released from jail in January of 2021, he obtained employment and began to work the services outlined in his plan of service. He completed a psychological evaluation, attended ten parenting classes, and maintained stable housing. Father did not submit to a drug and alcohol evaluation, did not complete individual counseling, and failed to comply with drug testing as requested by the Department. M.L. was a year old when Father exercised his first visitation in April of 2021. Father only visited with M.L. two or three times during the pendency of the case, and he failed to attend several scheduled visits with M.L.

The associate judge conducted a bench trial on April 29 and June 16, 2021. At trial, the Department produced evidence that Mother was awaiting transportation to a federal facility to begin a twenty-year sentence for distribution of methamphetamine. Mother testified that she and Father began living together in 2019. According to Mother, Father knew that she used methamphetamine daily and that she was selling methamphetamine out of the home they shared. She also claimed that he witnessed her using methamphetamine after she told him that she was pregnant with M.L.

Father testified that he has five children ranging in age from fifteen years to five months. Father acknowledged that he has been incarcerated four times since his first child was born and was incarcerated when his last three children were born. The evidence showed that Father has a significant criminal history beginning in 2005. His criminal history includes a conviction for aggravated assault and two convictions for drug possession. In 2016, Father was sentenced to forty-six months in federal prison due to his involvement in a criminal enterprise involving methamphetamine. After Father was paroled in 2019, he lived in a halfway house and met Mother. Father was aware that Mother was a methamphetamine dealer when he began living with her and they married a few months later. Father knew that Mother was pregnant when he left her in the fall of 2019. Father tested positive for methamphetamine in November of 2019, and he was arrested and incarcerated for violating his parole.

The Department presented evidence that Father has a history of methamphetamine use since 2012, and that he used methamphetamine after he was released from incarceration in 2015 and 2019. After the termination trial began in April of

3

2021, Father was arrested twice. However, Father asserted his Fifth Amendment privilege and declined to answer any questions concerning his recent arrests or drug use.

The Department also presented evidence that Father had previous involvement with the Department in 2016, and that his parental rights were terminated in 2017 on grounds including endangerment. At the time of trial, the mother of his youngest child was incarcerated on a federal possession charge and Father had supervised visitation with that child.

At the time of trial, M.L. had been in the care of his maternal aunt and her husband for more than a year. M.L. is doing well and is bonded with his placement. The maternal aunt and her husband have a stable home, own a business, and are willing to adopt M.L. if parental rights are terminated.

The trial court terminated Father's parental rights to M.L. on the grounds of endangering conditions, endangerment, previous termination of parental rights to another child based on endangering conditions or endangerment, and failure to comply with a court order that established actions necessary to retain custody of the child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (M), (O).[3] The trial court also found that termination was in the best interest of M.L. *See* § 161.001(b)(2).

---

[3] Further references to provisions of the Texas Family Code will be by reference to "section ___" or "§ ___."

4

Law and Analysis

Pursuant to *Anders*, Father's court-appointed appellate counsel has filed a brief certifying that he has diligently searched the record and has concluded that the record reflects no arguably reversible error that would support an appeal. *In re L.J.*, No. 07-14-00319-CV, 2015 Tex. App. LEXIS 427, at *2-3 (Tex. App.—Amarillo Jan. 15, 2015, no pet.) (mem. op.); *In re Schulman*, 252 S.W.3d 403, 406 n.9 (Tex. Crim. App. 2008) (orig. proceeding); *Porter v. Tex. Dep't of Protective & Regulatory Servs.*, 105 S.W.3d 52, 56 (Tex. App.—Corpus Christi 2003, no pet.) ("[W]hen appointed counsel represents an indigent client in a parental termination appeal and concludes that there are no non-frivolous issues for appeal, counsel may file an *Anders*-type brief").

Counsel certifies that he has diligently researched the law applicable to the facts and issues and discusses why, in his professional opinion, the appeal is frivolous. *In re D.A.S.*, 973 S.W.2d 296, 297 (Tex. 1998) (orig. proceeding). By his *Anders* brief, counsel concludes that reversible error is not present because sufficient evidence supports termination under subsections (D), (E), (M), and (O) in the trial court's order. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re T.N.*, 180 S.W.3d 376, 384 (Tex. App.—Amarillo 2005, no pet.) (only one predicate finding under section 161.001(b)(1) is necessary to support termination when there is also a finding that termination is in a child's best interest). Counsel has complied with the requirements of *Anders* by providing a copy of the brief, motion to withdraw, and appellate record to Father, and notifying him of his right to file a pro se response if he desired to do so. *Kelly v. State*, 436 S.W.3d 313, 319-20 (Tex. Crim. App. 2014); *In re L.V.*, No. 07-15-00315-CV, 2015 Tex. App. LEXIS

11607, at *2-3 (Tex. App.—Amarillo Nov. 9, 2015) (order) (per curiam). Father has not filed a response to his counsel's *Anders* brief.

Due process requires that termination of parental rights be supported by clear and convincing evidence. *In re E.M.E.*, 234 S.W.3d 71, 72 (Tex. App.—El Paso 2007, no pet.) (citing *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002)). This standard falls between the civil preponderance of the evidence standard and the reasonable doubt standard of criminal proceedings. *Id.* at 73. Clear and convincing evidence is that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007. Reviewing the legal sufficiency of the evidence supporting parental termination requires us to review "all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. In a factual sufficiency review, we are to determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief about the truth of the matter on which the movant bore the burden of proof. *In re C.H.*, 89 S.W.3d 17, 28-29 (Tex. 2002); *In re T.B.D.*, 223 S.W.3d 515, 517 (Tex. App.—Amarillo 2006, no pet.).

Pursuant to the Texas Supreme Court opinion in *In re N.G.*, we must conduct a specific review of the trial court's findings under section 161.001(b)(1)(D) and (E), because of the potential future consequences to appellant's parental rights concerning a

6

different child. *In re N.G.*, 577 S.W.3d 230, 235-37 (Tex. 2019) (per curiam);[4] *In re M.M.*, 584 S.W.3d 885, 889 (Tex. App.—Amarillo 2019, pet. denied) (mem. op.).

Section 161.001(b)(1)(D) permits termination when clear and convincing evidence shows that the parent knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. *See* § 161.001(b)(1)(D). Subsection (D) requires a showing that the environment in which the child was placed posed a danger to the child's physical or emotional health, and it permits termination based on a single act or omission by the parent. *In re J.A.S.*, No. 07-12-00150-CV, 2012 Tex. App. LEXIS 8087, at *13-14 (Tex. App.—Amarillo Sept. 25, 2012, no pet.) (mem. op.). Subsection (D) concerns the child's living environment, rather than the parent's conduct, though parental conduct may produce an endangering environment. *Jordan v. Dossey,* 325 S.W.3d 700, 721 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). It is not necessary that the child's living environment directly threaten the child or that the child be injured, but the parent must at least be aware of the potential for danger to the child in such an environment and must have disregarded that risk. *In re S.M.L.,* 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Illegal drug

---

[4] Subsection (b)(1)(M) permits parental rights to be terminated if the parent has "had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E) or substantially equivalent provisions of the law of another state." *In re N.G.*, 577 S.W.3d at 234 (quoting section 161.001(b)(1)(M) of the Family Code). Because findings based on subsections (b)(1)(D) or (E) may become "a basis to terminate parent's rights to other children," the Supreme Court reasoned that when a parent presents an appellate issue related to subsections (b)(1)(D) or (E) and the appellate court does not address the issue on appeal, the appellate court "eliminates the parent's only chance for review of a finding that will be binding as to parental rights to other children." *Id.* at 235. According to the Supreme Court, "the parent's fundamental liberty interest at stake outweighs the state's interest in deciding only what is necessary for final disposition of the appeal." *Id.* at 237. "Allowing section 161.001(b)(1)(D) or (E) findings to go unreviewed on appeal when the parent has presented the issue to the court thus violates the parent's due process and due course of law rights." *Id.*

use and criminal activity support a conclusion that the child's surroundings endanger his or her physical or emotional well-being. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.— Fort Worth 2003, no pet.). The relevant time frame under this subsection is prior to the child's removal. *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied).

Section 161.001(b)(1)(E) permits termination when clear and convincing evidence shows that the parent has engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the child's physical or emotional well-being. *See* § 161.001(b)(1)(E). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical or emotional well-being was the direct result of the parent's conduct, including acts, omissions, and failures to act. *In re J.T.G.*, 121 S.W.3d at 125. Termination under subsection (E) must be based on more than a single act or omission. A voluntary, deliberate, and conscious course of conduct by a parent is required. *Id.* Thus, while both subsections (D) and (E) focus on endangerment, they differ regarding the source and proof of endangerment. *In re S.M.L.*, 171 S.W.3d at 477. To support a finding of endangerment, the parent's conduct does not necessarily have to be directed at the child, nor is the child required to actually suffer injury. *Tex. Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531, 533 (Tex. 1987).

In this case, the trial court heard evidence of Father's extensive criminal history and drug use, his prior involvement with the Department, the termination of his parental rights to another child on endangerment grounds, and his association with people known to be involved with the distribution or use of illegal drugs. A parent's mistreatment of other children may be considered in deciding whether that parent engaged in a course of

8

conduct that endangered the physical or emotional well-being of a child. *Cervantes-Peterson v. Texas Dep't of Fam. & Protective Servs.,* 221 S.W.3d 244, 253 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (en banc). In addition, evidence of a parent's criminal history, convictions, and resulting imprisonment may establish an endangering course of conduct. *In re J.S.,* 584 S.W.3d 622, 635 (Tex. App.—Houston [1st. Dist.] 2019, no pet.); *In re V.A.,* No. 07-17-00413-CV, 2018 Tex. App. LEXIS 1521, at *10 (Tex. App.—Amarillo Feb. 27, 2018, no pet.) (mem. op.) (a parent's continued use of drugs demonstrates an inability to provide for the child's emotional and physical needs and to provide a stable environment); *In re J.S.B.,* Nos. 01-17-00480-CV, 01-17-00481-CV, 01-17-00484-CV, 2017 Tex. App LEXIS 11930, at *42-43 (Tex. App.—Houston [1st Dist.] Dec. 21, 2017, pet. denied.) (mem. op.) (a parent's criminal history is relevant in analyzing the present and future emotional and physical danger to a child and whether a parent is capable of providing a safe and stable home for his child); *In re K.W.,* No. 02-09-00041-CV, 2010 Tex. App. LEXIS 291, at *18-23 (Tex. App.—Fort Worth Jan. 14, 2010, no pet.) (mem. op.) (mother's drug use supported endangerment findings against father under predicate grounds (D) and (E)).

Upon his release from incarceration, Father partially complied with his service plan, but he did not complete all of his services. Notably, Father failed to comply with the service plan requirements that he obtain a substance abuse assessment and submit to random drug testing. A parent's refusal to submit to drug testing may be treated as if he had tested positive for drugs. *In re C.A.B.,* 289 S.W.3d 874, 885 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

We conclude that the trial court's findings with respect to (D) and (E) are

supported by legally and factually sufficient evidence.

The order of termination also lists subsection (M) as a predicate ground for termination. The prior termination of a parent's rights as to another child on child-endangerment grounds is a sufficient statutory predicate ground for the termination of the parent's rights as to another child. *See* 161.001(b)(1)(M). Our examination of the record reveals that the Department did not plead subsection (M) as a ground for termination and Father's trial counsel objected to the trial court considering subsection (M) as a ground for termination. Because a petition for termination is required to include the statutory grounds alleged for termination, we reform the trial court's order of termination to delete subsection (M) as a predicate ground for termination. *See* § 161.101(a).

As in a criminal case, we have independently examined the entire record to determine whether there is a non-frivolous issue that might support the appeal. *See Penson v. Ohio*, 488 U.S. 75, 82-83, 109 S. Ct. 346, 102 L. Ed. 2d 300 (1988); *Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991). Our independent review supports termination under subsection (D) and (E). *See In re N.G.,* 577 S.W.3d at 234-35. Based on this record, we conclude that a reasonable factfinder could have formed a firm belief or conviction that grounds for termination existed and that termination of Father's parental rights was in the best interest of M.L. *See* § 161.001(b)(1), (2). After reviewing the record and the *Anders* brief, we agree with counsel that there are no plausible grounds for reversal.

Conclusion

We affirm the trial court's order terminating Father's parental rights to M.L. as reformed.[5]

Judy C. Parker
Justice

---

[5] We call counsel's attention to the continuing duty of representation through the exhaustion of proceedings, which may include the filing of a petition for review. Counsel has filed a motion to withdraw, on which we will take no action. *See In re P.M.*, 520 S.W.3d 24, 27 (Tex. 2016) (per curiam).